IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL E. WYATT,   )   | Civil Action No. 7:14-cv-492 |
|     Plaintiff,   )   | |
|     )   | **MEMORANDUM OPINION** |
| v.   )   | |
|     )   | By:   Norman K. Moon |
| JOHNNY OWENS, *et al.*,   )   | United States District Judge |
|     Defendants.   )   | |

Plaintiff Michael E. Wyatt ("Plaintiff"), a Virginia inmate proceeding *pro se*, filed this action on September 11, 2014. Pursuant to 42 U.S.C. § 1983, Plaintiff alleges that various state law enforcement officials, namely Investigators Johnny Owens,[1] Allen Shelton, William Harris, Scott Wyatt, and Corporal M. D. Pickeral (collectively "Defendants"), violated his rights under the Fourth Amendment to the United States Constitution by using excessive force during their arrest of Plaintiff on July 3, 2012. The case is now before the Court on Defendants' motion for summary judgment. After reviewing the record, I find genuine issues of material facts in dispute that preclude granting summary judgment to defendants Owens, Shelton, and Wyatt. Investigator Harris and Corporal M.D. Pickeral, however, are entitled to summary judgment.

### I. FACTUAL ALLEGATIONS

In his Complaint and other submissions, Plaintiff alleges that the following sequence of events transpired on July 3, 2012. That afternoon, Johnny Owens, an investigator for the Pittsylvania County Sheriff's Office, was searching for Plaintiff, who was wanted as a suspect in an armed robbery. Investigator Owens spotted Plaintiff's vehicle parked outside a hotel in Danville, Virginia, and then saw Plaintiff exit the hotel and enter the vehicle. When Owens

---

[1] Plaintiff initially misidentified Johnny Owens as a United States Marshal, but that mistake has been corrected to reflect the fact that Owens was at all relevant times an investigator for the Pittsylvania County Sheriff's Office.

approached in his own vehicle, Plaintiff drove off, prompting Owens to call for backup while he followed in pursuit. Plaintiff eluded Owens and other pursuing officers in a short-lived car chase before pulling into a parking lot and abandoning his vehicle. Plaintiff then briefly gave flight on foot before he was confronted by a man who identified himself as a law enforcement officer. Plaintiff responded by stopping and raising his hands, intending to surrender himself into custody. Plaintiff alleges that as he surrendered, an officer—he is not clear who—tackled him from behind, knocking him to the ground and restraining him with handcuffs. He claims that once he was restrained, Investigators Johnny Owens, Allen Shelton, William Harris, Scott Wyatt, and Corporal M. D. Pickeral savagely beat him. Plaintiff states that the officers had no reason to use force against him, as he was cooperative and offered no resistance once he abandoned his flight. Plaintiff does not identify the specific role played by any individual officer in this altercation, save his claim that Investigator Owens repeatedly slammed his knee into Plaintiff's back, ribs, and head. Plaintiff alleges that this assault was so severe that it caused him to lose consciousness. Plaintiff also claims that this encounter has led to chronic pain in his shoulder, back, and neck, reoccurring migraines, and significant loss of vision in his right eye.

Investigators Owens, Shelton, and Wyatt have submitted affidavits which paint a different picture of this incident. According to the officers, when Plaintiff was initially approached at the hotel by Investigator Owens and Shelton, who were together in the same vehicle, Plaintiff fled at a high rate of speed, driving over the road verge and almost hitting an oncoming vehicle. Owens and Shelton then pursued Plaintiff at more than 80 miles an hour as Plaintiff eluded them, often by driving into oncoming traffic. When Plaintiff finally stopped and gave flight on foot, Owens had been joined in the pursuit by Investigator Scott Wyatt, who exited his vehicle and ran after Plaintiff. According to Investigator Wyatt, Plaintiff ran from the

officers without taking his right hand away from his right side waist area. Concerned that Plaintiff had a weapon, as he was described as armed and dangerous by the Danville Police Department, Investigator Wyatt grabbed Plaintiff by his upper body and slammed him to the pavement, where he landed face first. Although knocked off his feet, Plaintiff continued to resist the officer and would not surrender his right hand, which was underneath him at his waistline. Investigator Wyatt then rolled Plaintiff onto his left side and back in an attempt to straighten out his left arm and get his right hand out from under him. Investigator Wyatt was joined by Investigator Shelton, who put his knee on Plaintiff's back in order to wrench his right hand free. Investigator Owens also joined the melee, striking Plaintiff four to five times with a closed fist while instructing him to put his hands behind his back. Because Plaintiff continued to resist, Investigator Wyatt stuck him three or four times in his left side while Investigator Owens applied a wristlock to Plaintiff's left arm. At this point, about fifteen seconds after the physical struggle began, the officers were able to subdue Plaintiff and place him in handcuffs. The officers claim that Plaintiff became compliant after he was handcuffed, and that they did not strike him once he was restrained.

Investigator Harris and Corporal Pickeral both submitted affidavits stating that they were not present at the scene during Plaintiff's encounter with the officers. Investigator Harris alleges that he arrived after Plaintiff had been apprehended and that did not make physical contact with Plaintiff other than to search him and remove items from his pockets. Corporal Pickeral states that he was not present during any of the events underlying this lawsuit, as he was off work that day. He has attached a copy of his timesheet for the day in question, which reflects that he was off duty on July 3, 2012. Plaintiff has not offered any evidence or argument to dispute the accounts of Investigator Harris or Corporal Pickeral.

Video footage from a police department dashboard camera, which was included as an exhibit to the Complaint, captured much of this incident. It is worth noting that the video is somewhat grainy and that the action occurs some distance away from the camera, and thus it is at times difficult to determine what exactly is occurring. The footage does not begin until the police car with the camera arrives at the scene, at which point Plaintiff is already on the ground and two individuals, presumably law enforcement officers, are wrestling with him. Almost immediately, they are joined by two other individuals who also get on top of Plaintiff. One of these individuals punches Plaintiff approximately half a dozen times. About five seconds later, another police vehicle pulls up, and an unidentified individual hops out and joins the other four officers, who are still on top of Plaintiff. This individual then strikes Plaintiff four or five times with his knee. At this point, the brawl appears to stop, and the five individuals slowly get off Plaintiff, who remains on the ground. Shortly thereafter, roughly forty-five seconds from when the police car with the dashboard camera first arrived, additional law enforcement vehicles reach the scene, and one of them parks in front of the camera, obscuring its view of Plaintiff.

This case is not the first time Plaintiff has attempted to bring civil charges against the officers involved in his apprehension and arrest. On December 1, 2013, Wyatt delivered to prison officials two different, but essentially identical complaints, which were both mailed to the district court and on December 10, 2013, filed as separate civil actions, *Wyatt v. Pittsylvania County Sheriff's Office et al.*, 7:13-cv-00576 (W.D. Va.) and *Wyatt v. Federal US Marshal et al.*, 7-13-cv-00577 (W.D. Va.). These complaints asserted § 1983 claims against law enforcement officials for the use of excessive force in Plaintiff's arrest. Both were dismissed without prejudice due to Plaintiff's failure to comply with the *in forma pauperis* inmate filing conditions of 28 U.S.C. § 1915. *Wyatt v. Federal US Marshal et al* was dismissed on December 31, 2013,

and *Wyatt v. Pittsylvania County Sheriff's Office et al* was dismissed on January 13, 2014. Thereafter, Plaintiff filed another complaint containing the same facts and legal theories, *Wyatt v. Owens et al.*, 7:14-cv-00141 (W.D. Va.), which he dated February 8, 2014, but was not received by the district court until March 31, 2014. That action was dismissed without prejudice on April 25, 2014, also because Plaintiff did not comply with *in forma pauperis* inmate filing conditions.

## II. STANDARD OF REVIEW

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* 6.

In reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004); *see also Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991) (at the summary judgment stage, "[i]t is not [the court's] job to weigh the evidence, to count how many affidavits favor the plaintiff and how many oppose him, or to disregard stories that seem hard to believe"). Detailed factual allegations in a verified, *pro se* complaint may be sufficient to withstand a motion for summary judgment with supporting affidavits containing a conflicting version of the facts. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ("[A] verified complaint is the equivalent of an opposing affidavit for summary

judgment purposes, when the allegations contained therein are based on personal knowledge.") (citing *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979)).

### III. DISCUSSION

Section 1983 provides a remedy when a Plaintiff can show that a "violation of a right secured by the Constitution and laws of the United States, and [] that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "There is no federal statute of limitations for § 1983 claims, so the state limitations period which governs personal injury actions is applied." *Lewis v. Richmond City Police Dep't*, 947 F.3d 733, 735 (4th Cir. 1991) (citing *Wilson v. Garcia*, 471 U.S. 261, 280 (1985), *partially superseded by statute as stated in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-80 (2004)). For personal injury claims, Virginia has a two-year statute of limitations. Va. Code § 8.01-243(A). Although the limitations period for § 1983 actions is borrowed from state law, "the question of when a cause of action *accrues* under [ ] § 1983 remains one of federal law." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc). Such an action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Id.* When a state's limitations period is used in a § 1983 action, however, the state's accompanying tolling rules apply. *Board of Regents v. Tomanio*, 446 U.S. 478, 484 (1980).

According to Plaintiff, the defendant officers used excessive force against him at the time of his apprehension on July 3, 2012, in violation of his constitutional right to be free from unreasonable seizures. Accordingly, his cause of action accrued on that date. Although this lawsuit was filed by the district court on September 11, 2014, roughly two years and two months after Plaintiff's cause of action accrued, a *pro se* inmate's complaint is considered "filed" when

[6]

he delivers to prison officials for mailing. *See Lewis v. Richmond City Police Depot*, 947 F.2d 733, 735-36 (4th Cir. 1991). In this case, Plaintiff signed and dated his complaint August 26, 2014. For purposes of this opinion, I will assume without finding that he also delivered it to prison officials that same day, thus tolling the statutory limitation period. Plaintiff is also entitled to tolling of that period for the time that his previously filed complaints asserting the same claim were pending. *See* Va. Code § 8.01-229(E)(1) (explaining that, if an action is initiated within the limitations period, "and for any cause abates or is dismissed without determining the merits, the time such action is pending shall not be computed as part of the period within which such action may be brought, and another action may be brought within the remaining period"); *see also Wolfe v. Roanoke City Jail*, 356 F. App'x 645 (4th Cir. 2009) (applying tolling to § 1983 claim). Because the statute of limitations is tolled for the three-month period during which Plaintiff's previously filed complaints were pending, this action falls within the two-year statute of limitations and must be addressed on the merits.

Claims of excessive force during a search or seizure, such as an arrest, are analyzed under the Fourth Amendment, which applies an objective "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Three factors must guide the objective reasonableness inquiry: (1) "the severity of the crime"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) whether the suspect is resisting arrest or attempting to flee. *Id.* at 396. A court must make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397. Police officers are not required to perfectly

interpret the situation, nor are they required to react perfectly to it. *See, e.g., Anderson v. Russell*, 247 F.3d 125 (4th Cir. 2001) (finding officers entitled to qualified immunity after shooting unarmed suspect, because officers reasonably believed that suspect might have been reaching for a weapon). Rather, officers are entitled to qualified immunity against suits for damages if a reasonable officer facing the same situation would *not* have known that his actions violated plaintiff's clearly established constitutional right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Where there exists no genuine dispute of material fact, the objective reasonableness of a particular use of force is an issue of law for the court. *See, e.g., Scott v. Harris*, 550 U.S. 372, 378-79 & n. 5 (2007) (holding that video recording of plaintiff's encounter with police "sp[oke] for itself" and established the absence of any genuine dispute of material fact bearing on objective reasonableness). When resolution of the qualified immunity question and the case itself both depend upon a determination of what actually happened, however, summary judgment is not proper. *Buonocore v. Harris*, 65 F.3d 347, 359 (4th Cir. 1995). Accordingly, the district court should not grant summary judgment where "there remains any material factual dispute regarding the actual conduct of the defendants." *Id.*

Taking the evidence in the light most favorable to Plaintiff, the nonmovant, I find that genuine issues of material fact remain in dispute regarding his allegations of unreasonable force with respect to Investigators Owens, Shelton, and Wyatt. The parties' accounts of what happened on July 3, 2012, are sharply divergent. The officers maintain that Plaintiff resisted their attempts to handcuff and arrest him, and that he would not move his right hand away from his waist area. They claim to have struck Plaintiff only when he was resisting and that they did not hit him after he was handcuffed, as he became compliant when he was restrained. Plaintiff,

[8]

Case 7:14-cv-00492-NKM-RSB    Document 30    Filed 08/20/15    Page 8 of 10    Pageid#: 185

however, alleges that he immediately raised his hands and surrendered when he was confronted by the officers. He states that he offered no resistance, but the officers tackled him to the ground, restrained him, and then proceeded to beat him to unconsciousness. It is not clear from the video footage whose version of events, Plaintiff, or the officers, is the correct one. *See Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (where the record contains an unchallenged videotape capturing the events in question, on which the plaintiff relies, the court must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape). The video does not begin until Plaintiff is already on the ground, and it is not clear from the footage if he is restrained or resisting when the officers strike him.

Accordingly, I find the evidence to be "such that a reasonable jury could return a verdict for the nonmoving party" on Plaintiff's allegations of unreasonable force. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Because genuine issues of material fact thus remain in dispute, defendants Owens, Shelton, and Wyatt have not established that they are entitled to summary judgment on the ground of qualified immunity or on the merits of Plaintiff's excessive force claims. *Id.*

Similarly, granting summary judgment with regard to Plaintiff's claim of punitive damages against defendants Owens, Shelton, and Wyatt would be premature given the factual dispute over the events giving rise his injuries. In a § 1983 action, a jury may award punitive damages when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected right of others." *Smith v. Wade,* 461 U.S. 30, 56 (1983). If Plaintiff's allegations were established at trial, he would be able to show that Investigators Owens, Shelton, and Wyatt's conduct to be recklessly or callously

indifferent to his federally protected rights. Consequently, Defendants' motion for summary judgment on the issue of punitive damages with regard to these three defendants will be denied.

There is not, however, a genuine issue of material fact in dispute with respect to Investigator Harris or Corporal Pickeral's role in Plaintiff's arrest. A Plaintiff in a § 1983 case must clearly show that a named defendant was personally involved in the allegations underlying the Complaint. *Rizzo v. Goode,* 423 U.S. 362, 96 (1976). Here, both Harris and Pickeral have submitted sworn affidavits stating that they were not present during the encounter when Plaintiff alleges excessive force was used against him, and Plaintiff has not responded to refute this evidence. The general allegations of his complaint alone are not sufficient to overcome their specific evidence that they were not present during the alleged use of excessive force.

## IV. CONCLUSION

For the reasons stated herein, I will deny Defendants' motion for summary judgment as to defendants Owens, Shelton, and Wyatt, but will grant summary judgment for defendants Harris and Pickeral. An appropriate order follows.

The Clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to Plaintiff.

ENTER: This __20th__ day of August, 2015.

*[signature]*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE