# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

|  |  |  |
|---|---|---|
| Michael E. Wyatt | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:14-cv-492-NKM-RSB |
| | ) | |
| v. | ) | |
| | ) | |
| Johnny Owens, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO QUASH

Defendants' motion to quash should be denied because the Defendants lack standing, identified no prejudice, and caused the very delay they now complain of. The reason Mr. Wyatt served discovery requests near the close of the original discovery period is because Defendants failed to comply with their own discovery obligations in a timely manner. In fact they still—more than four months after Mr. Wyatt's requests—have not produced relevant, discoverable material in their possession. The Court should not reward Defendants' attempt to run out the clock. Mr. Wyatt respectfully asks this Court to deny Defendants' motion to quash, ECF No. 70, and, if necessary, to modestly extend the initial discovery window, ECF No. 53, under Rules 6(b) and 16(b)(4) to allow the parties to efficiently complete discovery.

## PROCEDURAL BACKGROUND

There can be no question that Mr. Wyatt diligently pursued discovery since counsel agreed to represent Mr. Wyatt in response to this Court's order, ECF No. 40, following his successful *pro se* opposition to Defendants' summary judgment motion, ECF No. 30.

Defendants' delays and unresponsiveness fully explain why discovery did not conclude during the originally allotted window:

- *Sheriff's Office:* One week after discovery began, on April 1, Wyatt subpoenaed the Pittsylvania County Sheriff's Office, which employs the Defendants and is represented by the same counsel as Defendants. *See* Exhibit A. The Sheriff's Office made no meaningful attempt to identify the electronic documents Wyatt requested.[1]

- *Original Defendants:* On April 4, Mr. Wyatt served requests for production and interrogatories on the three original Defendants (Owens, Shelton, Scott Wyatt). *See* Exhibit B. These Defendants did not respond for more than a month (May 13), and likewise made no meaningful attempt to identify relevant electronic documents.

- *New Defendants:* Based on information contained in Defendants' initial disclosures and discovery responses, on June 10 Wyatt promptly moved to add two Defendants involved in his beating (Worsham and Nicholson). The day after the Court granted that motion, ECF No. 59, Wyatt served discovery on the new defendants. *See* Exhibit C. Yet the new Defendants did not respond until more than a month later (August 5).

- *Motion to Compel:* Defense counsel consistently rebuffed Mr. Wyatt's efforts to resolve deficiencies in the initial productions without the Court's involvement. *E.g.*, Exhibit D (June 23rd email). This eventually required Mr. Wyatt to move to compel. *See* ECF No. 65 at 2–5 (describing efforts); Exhibit E (July 18th email). But on July 25, the *next business day* after Mr. Wyatt filed his motion, defense counsel finally produced responsive emails.

- *Remaining unproduced material:* The initial electronic collection was highly restricted and forced Mr. Wyatt to again meet-and-confer repeatedly in order to obtain plainly relevant correspondence that should have been produced months earlier. *See, e.g.,* Exhibits D, E. These communications, requested April 1, were partially produced on August 15 and on August 29 (9 days after the originally scheduled close of discovery). Even though counsel collected those responsive emails more than one month ago, there are still numerous emails defense counsel has refused to produce—without any explanation why this material was not collected at the outset of the discovery period and has not been produced in full. *See* Exhibits F, G (August 24 and September 13 emails).

- *Depositions:* Mr. Wyatt likewise sought to schedule depositions promptly after receiving the initial document productions. Plaintiff's counsel aimed to ensure sufficient time, within the initial discovery period, to serve follow-up discovery requests for relevant information revealed during the depositions. Defense counsel canceled a June 23 phone conference scheduled to discuss depositions, was not

---

[1] The Sheriff's Office produced roughly 20 emails in response to Mr. Wyatt's April requests. After finally collecting responsive emails months later, defense counsel identified hundreds of responsive electronic documents that had not been produced.

available again until July 6, and then indicated he was unavailable until mid-August except for two days in July. *See* Exhibit D. As a result, almost all depositions occurred between August 8 and 19—at the very end of the initial discovery period.

The discovery Defendants now object to followed directly from information revealed to Mr. Wyatt late in the initial discovery period due to these delays.

It was not until depositions concluded, for example, that Mr. Wyatt confirmed that none of the witnesses were aware of an anonymous letter to Mr. Wyatt's lawyer identifying incriminating dash-camera videotapes (which relates to Mr. Wyatt's Rule 30(b)(6) request to the City Police), that the Sheriff's Office had failed to offer any training in hands-on force (which relates to the Sheriff's Office and Defendants' follow-up requests), or that only the prosecutors, rather than the detectives, possessed video of the alleged robbery (which relates to the Commonwealth Attorney discovery requests). Moreover, it was not until receiving emails in mid-August (too late to use during depositions) that Mr. Wyatt learned of communications and recordings exchanged between the Sheriff's Office and Commonwealth Attorney regarding the beating and subsequent car search (which relates to the Commonwealth Attorney requests).

In response to this late-arriving information, Mr. Wyatt acted promptly on August 18—within the original discovery period—to served targeted follow-up requests to the Defendants, Sheriff's Office, the City and County Commonwealth Attorneys Offices, the Danville Police Department, and WSET-TV.

In response, WSET-TV produced videotapes to Mr. Wyatt, the City and County Commonwealth Attorney's Offices both contacted Plaintiff's counsel to discuss the responsive documents they were collecting, and the Danville City Attorney corresponded with Plaintiff's counsel regarding scheduling of the Rule 30(b)(6) deposition. None of these third parties lodged an objection to Plaintiff's request based on timeliness or any other grounds.

3

Nearly two weeks after Mr. Wyatt's requests, Defendants filed a motion to quash. Counsel did not meet and confer with Mr. Wyatt's counsel or even give notice of the intention to move to quash. Exhibits H, I (emails seeking unsuccessfully to meet and confer in response to motion to quash). That same day, after being contacted by defense counsel, the City and County Commonwealth Attorney Offices mailed Plaintiff's counsel identical letters stating their understanding that Defendants' motion precluded them from producing the information they had collected—even though the City Commonwealth Attorney had already collected materials and obtained discs from Mr. Wyatt to produce its responsive information. Exhibits J, K. None of the third parties cited any burden or other basis for withholding the information, other than Defendants' pending motion. That same day, Plaintiff's counsel asked the third parties to identify the basis for their position that production was barred. Exhibits L, M. No counsel for Defendants or the third parties has responded with any reason why they may not or cannot produce the responsive information in their control.

## ARGUMENT

**I.     Defendants Lack Standing To Challenge the Third-Party Subpoenas**

As to the third-party discovery requested by Mr. Wyatt, the motion to quash must be denied because Defendants lack standing to object. "Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought. This personal right or privilege standard has been recognized in numerous cases." 9A Wright & Miller, Federal Practice and Procedure § 2459 (3d ed.) (collecting cases). The Fourth Circuit has followed the same rule. *See, e.g., In re Grand Jury Subpoena John Doe, No. 05GJ1318*, 584 F.3d 175, 184 n.14 (4th Cir. 2007) (affirming denial of motion to quash a grand jury subpoena duces tecum for

4

lack of standing); *United States v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005) (denying motion to quash for lack of standing because party "failed to make any showing that he has a personal right to, or privilege in, the information being sought in the subpoenas"); *Watty v. Sheriff of Clarendon Cty.*, No. 10-CV-2056, 2012 WL 269363, at *4 (D.S.C. Jan. 30, 2012) (denying motion to quash third-party subpoenas for lack of standing).

Defendants have no personal right or privilege in the requested documents that would give them standing to object to the documents' discovery. Nor have Defendants even asserted one. The requests to the Commonwealth Attorneys Offices, the Danville Police Department, and WSET-TV all relate exclusively to Mr. Wyatt's investigation and prosecution, or coverage thereof. And the request to the Sheriff's Office largely concerns training and policies that apply to Defendants as well as other employees; again, Defendants have articulated no personal right or privilege that applies. Moreover, the third parties themselves have not resisted the subpoenas on *any* ground, other than to cite their understanding the Defendants' motion barred them from disclosing responsive information. Accordingly, the Court should deny Defendants' motion as to all nonparties for lack of standing.

## II. Defendants' Motion to Quash Should Be Denied Because Defendants Caused the Delay They Complain of

Motions to quash a subpoena are "entrusted to the sound discretion of the district court." *In re Fitch, Inc.,* 330 F.3d 104, 108 (2d Cir. 2003). Under specified circumstances, a non-party may challenge a subpoena that: (1) fails to allow a reasonable time to comply; (2) requires a person to comply beyond the geographical limits specified in Rule 45(c); (3) requires disclosure

5

of privileged or other protected matter, if no exception or waiver applies; or; (4) subjects a person to undue burden. Fed.R.Civ.P. 45(d)(3)(A).[2]

Defendants' motion fails for numerous reasons. *First*, its only possible justification is the reasonableness of the requests' timing; there is no allegation that they impose an undue burden, intrude on privileged matter, or exceed geographical limits. *See id.* And the reason Mr. Wyatt needed to serve final discovery requests near the end of discovery is entirely explained by Defendants' persistent foot-dragging throughout discovery—which continues even today in light of their ever-lengthening delay in producing relevant emails collected weeks or even months ago. *See supra* 2; Exhibits F, G. The Court's discretion to grant a motion to quash should not become the means by which Defendants are rewarded for their tardiness. *See Mitchell v. Felker*, No. CIV S-08-1196 JAM, 2011 WL 4458784, at *3 (E.D. Cal. Sept. 23, 2011).

*Second*, no subpoenaed third-party has objected that it lacked "reasonable time to comply" with any deadline for production, and for good reason. As noted above, one party had already complied by the time Defendants' objected, another party was prepared to disclose its discoverable material on Plaintiff-provided media, and two other parties had already been in touch with Plaintiff's counsel regarding their responses. Under these circumstances, there is nothing unreasonable about allowing them to produce already-collected documents—particularly given the Federal Rules' broad and liberal policy in favor of disclosure. *See, e.g.,* Fed. R. Civ. P. 1; *Herbert v. Lando*, 441 U.S. 153, 177 (1979).

---

[2] Defendants are of course a *party* objecting to discovery, and therefore are subject to Rule 26(c)(1)—which expressly requires that a "motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Defendants violated this prerequisite for protection by failing to confer—both before filing the motion, and also by ignoring Plaintiff's counsel's attempt to avoid motions practice. *See* Exhibits H, I (September 1st and 7th emails).

*Third*, Defendants have identified no reason why these productions would impede the progress of this litigation or otherwise impose any prejudice or burden. The discovery requested merely addresses gaps in the factual record revealed during depositions and late-arriving document productions. If anything, it is Defendants' resort to motion practice—without even attempting to narrow or accelerate the remaining discovery by conferring with Plaintiff's counsel, *see above*—that has slowed the lawsuit's progress.

*Fourth*, unlike many cases in which courts grant motions to quash, Mr. Wyatt's final discovery requests were submitted *within* the initial discovery period—not after discovery had ended. *See, e.g.*, *McAfee v. Boczar*, No. 3:11CV646, 2012 WL 2505263, at *1 (E.D. Va. June 28, 2012); *Hickey v. Myers*, No. 09-cv-1307, 2013 WL 2418252, at *5 (N.D.N.Y. June 3, 2013) (considering subpoenas issued "*after* the discovery deadline has passed to obtain documents the party was aware of *before* the discovery cutoff date") (emphasis added). Indeed, the targeted follow-up discovery related overwhelmingly to information whose existence or significance Mr. Wyatt did not know until nearly the close of the initial window. *See supra* p. 3.

### III. In the Alternative, and to Avoid Any Doubt, the Court Should Grant a Modest Extension to Facilitate the Orderly and Quick Resolution of Discovery

Given the equities of the parties' positions and the need to efficiently conclude discovery, the Court should modify the schedule to afford a modest period of time for the parties to complete the outstanding discovery requests—either in addition to or in lieu of denying the motion to quash.

#### A. There Is "Good Cause" To Modify The Scheduling Order To Allow More Time To Respond To Pending Discovery Requests

Under Rule 16(b)(4) of the Federal Rules of Civil Procedure, a Court may modify a scheduling order for "good cause." Good cause requires "the party seeking relief [to] show that

the deadlines cannot reasonably be met despite the party's diligence." Indeed, "diligence" is the "touchstone of 'good cause' under Rule 16(b)." *E.g., Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W. Va. 1995). Thus, good cause turns on the "relative diligence of the lawyer" who seeks the scheduling order modification, *Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) (quoting 3 Moore's Federal Practice § 15.14[1] [b], at 16-72 (3d ed. 2010)), and should focus on the "moving party's reasons for seeking modification," *Marcum*, 163 F.R.D. at 254, (quoting *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992)). When an extension is necessary because of an adversary's delayed production of documents and the moving party's limited time to review documents, for example, courts have found "good cause" to extend discovery where the lawyer seeking modification otherwise acted diligently. *See, e.g.*, *W. Virginia Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D.W. Va. 2001).

  The imbalance between the parties' diligence here is stark. Mr. Wyatt has been diligent in serving discovery, scheduling depositions, reviewing and following up on gaps in document productions, and conferring with opposing counsel regarding the need to accelerate delayed or missing productions. *See supra* p. 2; ECF No. 65 (motion to compel). As with Mr. Wyatt's previous discovery requests, those served on August 18 were meant to resolve gaps in the factual record in the most targeted and efficient way possible—and only after exhausting Mr. Wyatt's efforts to obtain information from Defendants themselves. There can be little doubt that Mr. Wyatt would not have needed to serve these supplemental discovery requests on August 18 if he had not accommodated Defendants' delays in production and deposition scheduling. The outstanding discovery requests, moreover, all seek material that Mr. Wyatt either learned from emails produced by Defendants and the Sheriff's Office after July 25 or August 15, or during

depositions between August 8 and 19. It would have been impossible, given the delayed productions and deposition scheduling, to serve these requests well in advance of the initial discovery period ending August 18. This sort of Defendant-induced delays is precisely the sort that lead courts to find "good cause" to extend discovery under Rule 16(b)(4). *See, e.g., Ocwen Tech*, 200 F.R.D. at 567; *Marcum*, 163 F.R.D. at 254.

Only a short period of time should be necessary to conclude discovery. Although the speed with which Defendants and others respond lies largely outside Mr. Wyatt's control, the fact that most parties have already collected the responsive information indicates it should not take long to produce the relevant information following an extension of the initial discovery window (or following the denial of the motion to quash). Mr. Wyatt believes an extension of only four weeks from this Court's decision should suffice to bring discovery to a reasonable conclusion.

**B. Plaintiff's Service of Discovery Requests May Be Excused Under Rule 6(b)**

In the alternative, the Court may simply treat the date of Mr. Wyatt's August 18 discovery requests as excusable neglect, thereby enforcing the subpoenas and discovery requests without any need to extend the discovery period. Under Rule 6(b), a district court may enlarge the period and permit the act where the omission is the "result of excusable neglect." *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 391 (1993). Good faith delays—as opposed to "inadvertence, ignorance of the rules, or mistakes construing the rules"— are often excused under Rule 6(b). *See Thompson v. E.I. DuPont de Nemours & Co.,* 76 F.3d 530, 534 (4th Cir. 1996). In determining whether a party has shown excusable neglect, a court will consider: (1) the danger of prejudice to the non-moving party; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant

acted in good faith. *E.g., Thompson,* 76 F.3d at 534; *Colony Apartments v. Abacus Project Mgmt., Inc.*, 197 F. App'x 217, 223 (4th Cir. 2006). All four factors weigh in favor of extending the discovery period so that Defendants and nonparties can respond to Mr. Wyatt's outstanding discovery requests.

*First*, as discussed, Defendants are not prejudiced by Mr. Wyatt's requests, and have not even attempted to articulate any such basis in its motion. And they of course are unable now to articulate a new theory of prejudice in a reply brief. *See United States v. Smalls*, 720 F.3d 193, 197 (4th Cir. 2013). Instead, it is Mr. Wyatt who was prejudiced when Defendants' delays and unresponsiveness required Mr. Wyatt to seek that information elsewhere.

*Second*, Mr. Wyatt's discovery requests had no discernible impact on judicial proceedings. The requests were made within the discovery period. They afforded the recipients the standard 30 days to respond. If the recipients had simply responded—uninterrupted by motions practice—discovery would have concluded without dispute, without affecting other filings, and *before* the unwarranted motion to quash will likely be decided.

*Third*, it was the Defendants' actions, not Mr. Wyatt's, that delayed the discovery process and forced Mr. Wyatt to have to serve discovery requests late in the discovery period. *See supra* II. Had Mr. Wyatt learned the underlying information in the ordinary course, rather than after depositions and document discovery in August, his final requests could have been served far earlier within the original discovery window.

*Fourth*, Mr. Wyatt has acted in good faith throughout the discovery period. That is proved by his diligence, his accommodation of Defendants' scheduling requests, and the lack of any allegation to the contrary during these proceedings.

10
Case 7:14-cv-00492-NKM-RSB Document 79 Filed 09/14/16 Page 10 of 12 Pageid#: 1221

Accordingly, the excusable-neglect factors confirm the reasonableness and equities of treating Mr. Wyatt's requests as timely and appropriate.

## CONCLUSION

The Court should deny the motion to quash and, in the alternative, extend the initial discovery window by four weeks to clarify the parties' obligations to resolve these previously issued requests.

Dated: September 14, 2016

\s\ Morgan Branch_____

Gordon D. Todd
Benjamin Beaton
Morgan Branch
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
Phone: 202-736-8760
Fax: 202-736-8711
Email: bbeaton@sidley.com

## **CERTIFICATE OF SERVICE**

I, Morgan Branch, one of the attorneys for Plaintiff Michael E. Wyatt, certify that I caused a copy of the attached to be served via ECF on the following counsel:

>Jim H. Guynn, Jr.
>Theresa Joan Fontana
>Guynn & Waddell, PC
>415 S. College Avenue
>Salem, VA 24153
>Phone: 540-387-2320
>Fax: 540-389-2350
>Email: jimg@guynnwaddell.com
>
>*Counsel for Defendants*

this 14th day of September, 2016.

\s\ Morgan Branch