**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| _____ | ) | |
| Michael E. Wyatt | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:14-cv-492-NKM-RSB |
| | ) | |
| v. | ) | |
| | ) | |
| Johnny Owens, _et al._, | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

Plaintiff Michael E. Wyatt's victory in this excessive-force case warrants the award of a reasonable attorneys' fee under 42 U.S.C. § 1988. His claim against Defendant Robert Worsham succeeded after more than one year of counseled litigation, which followed Mr. Wyatt's unsuccessful search for a lawyer able to vindicate his rights. Extensive motions practice, protracted discovery disputes, and a hard-fought trial resulted in an award of both compensatory and punitive damages. That victory ensured not only justice for Mr. Wyatt, but also served the important public interest of deterring unlawful and unconstitutional police behavior. Because § 1988 exists to encourage the representation of meritorious and important constitutional claims that might not otherwise be litigated, 42 U.S.C. § 1988(b), Federal Rule of Civil Procedure 54(d), and Local Rule 54(a) all emphatically support this claim for fees, expenses, and costs.[1]

---

[1] At this time, Mr. Wyatt seeks only fees, costs, and expenses through and including trial, and reserves the right to seek fees, costs, and expenses related to any post-trial motions, appeal, and fees litigation.

## BACKGROUND AND PROCEDURAL HISTORY

The procedural history of this case, set forth in previous filings, makes plain the need for and value of counsel in constitutional cases. From prison and proceeding pro se, Mr. Wyatt brought a civil action under 42 U.S.C. § 1983 against officers he believed responsible for beating him during his arrest. ECF No. 1. As a pro se litigant, Mr. Wyatt was not entitled to Rule 26(a) initial disclosures until after the summary judgment stage, and was unable to conduct meaningful discovery. Because Mr. Wyatt lacked trial counsel, this Court granted in part Mr. Wyatt's motion to appoint counsel by inviting members of the bar to enter an appearance on Mr. Wyatt's behalf. ECF No. 40. Attorneys from Sidley Austin LLP accepted this invitation in February 2016 and assumed representation of Mr. Wyatt. ECF Nos. 41-48, 52.

Mr. Wyatt's new counsel essentially had to start the case anew. Counsel moved for leave to amend the initial pro se complaint, which had alleged the wrong legal theory and incorrectly named certain defendants. *See* ECF Nos. 1, 60. Counsel conducted full discovery—including initial disclosures, interrogatories, document requests from multiple custodians, motions practice over Defendants' failure to timely comply with those requests, and depositions. And counsel prevailed on numerous crucial pretrial evidentiary motions, including the Defendants' motion for summary judgment, ECF No. 96, at 2–8; motion to quash subpoenas issued to the Danville and Pittsylvania County Commonwealth's Attorney's Offices and the Pittsylvania County Sheriff's Office, ECF No. 90; motion to exclude Plaintiff's use-of-force expert, ECF No. 96, at 8–11; opposition to Plaintiff's motion to depose Michael Young, ECF No. 121; motion to exclude the Defendants' use-of-force history, ECF No. 155, at 6–8; and motion to exclude critical video evidence, *id.* at 9. Counsel's discovery and motions practice addressed significant evidence, such as

2

video evidence and similar prior uses of force, which would otherwise have remained unknown to counsel or excluded from the jury.

On the eve of trial, Mr. Wyatt agreed to dismiss Defendants Thomas Nicholson and Lester Alan Shelton from the case. ECF No. 174. Trial against the remaining three Defendants—Worsham, H. Scott Wyatt, and Johnny Owens—commenced on April 18, 2017 (more than one year after counsel's appearance in the case) and lasted three days. Mr. Wyatt called seven witnesses in his case in chief, including the three defendants, the two dismissed parties, and two experts.[2] At the conclusion of trial, the jury returned a verdict against Defendant Worsham for $50,000 in compensatory damages and $100,000 in punitive damages, and in favor of Defendants Wyatt and Owens. ECF No. 172. This Court entered judgment accordingly on April 28, 2017. ECF No. 175.

Mr. Wyatt is undoubtedly the prevailing party in this case, and accordingly he now seeks attorneys' fees, expenses, and costs for success in this action.

## ARGUMENT

Congress enacted 42 U.S.C. § 1988 "to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley* v. *Eckerhart*, 461 U.S. 424, 429 (1983). In any action to enforce § 1983 (and other civil rights statutes), the district court "may allow the prevailing party … a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. "Congress viewed the fees authorized by § 1988 as 'an integral part of the remedies necessary to obtain' compliance with § 1983." *Maine v. Thiboutot*, 448 U.S. 1, 11 (1980) (quoting S. Rep. No. 94–1011, at 5, 1976 U.S.C.C.A.N. 5908, 5913). For that reason, the Fourth Circuit has held that a "prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances

---

[2] Counsel paid of pocket for two experts—on police-practices and medical issues—to advise on Mr. Wyatt's case. Expert costs are largely unrecoverable for § 1983 claims.

would render such an award unjust." *Lefemine v. Wideman*, 758 F.3d 551, 555 (4th Cir. 2014). Section 1988 further permits a prevailing § 1983 plaintiff to recover "reasonable out-of-pocket expenses … which are normally charged to a fee-paying client." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988) (quoting *Northcross v. Board of Educ. of Memphis City Schools,* 611 F.2d 624, 639 (6th Cir. 1979)).

Mr. Wyatt prevailed on his constitutional claim in this case, securing compensatory damages for pain, suffering, and emotional distress, as well as punitive damages for Defendant Worsham's callous and malicious conduct. Mr. Wyatt's attorneys, who assumed Mr. Wyatt's representation at the invitation of the Court, expended significant time and resources on this case and represented Mr. Wyatt with the same vigor and diligence as any paying client, despite the considerable risk Mr. Wyatt would not prevail, leaving them with no compensation whatsoever. The Court therefore should grant the requested fees, costs, and expenses—which represent less than half of the standard market value of counsel's services.

## I.     Mr. Wyatt Is a Prevailing Party.

A civil rights plaintiff is a "prevailing party" within the meaning of § 1988(b) if he "succeed[s] on any significant issue in litigation which achieves some of the benefit ... sought." *Tex. State Teachers Ass'n. v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 789 (1989) (quotation omitted). A jury awarded Mr. Wyatt the precise relief he sought: compensatory damages for his pain, suffering, and emotional distress, and punitive damages against Defendant Worsham. Mr. Wyatt is unquestionably a prevailing party.

Mr. Wyatt's dismissal of claims against Defendants Nicholson and Shelton does not diminish Mr. Wyatt's status as a prevailing party, nor does the jury's verdict in favor of Defendants Wyatt and Owens. As the U.S. Supreme Court has explained, the "prevailing party" stand-

ard is "generous," and time spent litigating unsuccessful claims should be excised from a prevailing party's fee award only if the unsuccessful claims were wholly unrelated to the successful claims. *Hensley*, 461 U.S. at 434–35. That is not the case here. Mr. Wyatt's claim against Defendant Worsham was inextricably tied to his claims against the other Defendants. The claims against all five Defendants arose from "a common core of facts" and were based on "related legal theories." *Id.* at 435. The other Defendants each witnessed Defendant Worsham's actions and testified at trial. Therefore counsel would have deposed and sought discovery concerning those individuals regardless of whether they were defendants. The evidentiary disputes and legal briefing in this case focused disproportionately on Defendant Worsham, and otherwise related to issues common to all Defendants. *See, e.g.*, ECF No. 81 (Plaintiff's opposition to Defendants Worsham and Nicholson's motion for summary judgment on statute-of-limitations grounds); ECF No. 144, at 3–9 (Plaintiff's opposition to motion to exclude Defendant Worsham's use-of-force history). Thus, the motions practice in this case would not have changed much with or without the other Defendants.

## II. Mr. Wyatt Is Entitled to the Requested Award of Attorneys' Fees.

Over the course of this litigation, attorneys and support staff from Sidley Austin have expended more than 3,000 hours on this case—which, at the firm's standard billing rates, results in total fees of more than $2 million. Todd Decl. (Ex. 1) ¶ 4. Plaintiff's Petition, however, seeks less than half of this amount: $858,491.25. This reduced amount reflects a conservative estimate of the hours reasonably spent on this litigation billed at an hourly rate tailored to the Western District of Virginia and commensurate with fee awards in recent civil rights cases within this District and the Fourth Circuit. The request, further, is limited to the attorneys and paralegal who entered an appearance or contributed directly to the trial, and thus excludes approximately

$180,000 of legal services expended by other attorneys and support staff. The request also does not include substantial non-working travel time between Washington, D.C., and Southern Virginia (66.5 hours) or time related to Plaintiff's Motion to Amend to add a supervisory-liability claim against Pittsylvania County Sheriff Michael Taylor (118 hours). Todd Decl. ¶ 8. Finally, counsel has exercised considerable billing judgment to reduce or eliminate time that might be viewed as unnecessary, duplicative, or inefficient. This request is a reasonable application of the lodestar method and consistent with the reasonableness factors described in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

### A.    The lodestar method, as informed by the *Johnson* factors, applies.

The "most useful starting point" for determining a reasonable fee award is the so-called lodestar method, which involves multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. The Supreme Court has described the lodestar method as the "dominan[t]" method for calculating attorneys' fees in civil rights cases, *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002), and has adopted a "strong presumption" that a lodestar-based award is reasonable, *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). The Fourth Circuit, too, has described the lodestar method as the proper "starting point" for an award of attorneys' fees that produces a "presumptively reasonable" fee. *E.g.*, *E. Associated Coal Corp. v. Dir., Office of Workers' Comp. Programs*, 724 F.3d 561, 570 (4th Cir. 2013).

To guide the application of the lodestar method, moreover, the Fourth Circuit has instructed district courts to also consider the twelve factors originally set forth in *Johnson*.[3]    *See*

---

[3] The *Johnson* factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered;

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009); *see also* S. Rep. No. 94-1011, at *6 (citing *Johnson*). The lodestar fee is presumptively reasonable, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984); the *Johnson* factors serve only to confirm that presumption (which they do here), support an upward adjustment (which Mr. Wyatt does not seek), or suggest an overall reduction (which would be inappropriate here). *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550–51 (2010) (the *Johnson* factors alone "g[ive] very little actual guidance to district courts").

**B.     The requested hours is an appropriate conservative accounting of the hours reasonably expended on this case.**

As noted above, the total time expended on this case by Sidley Austin attorneys and support staff was approximately 3,600 hours. This Petition, however, seeks fees for 2,900.3 hours expended in this case by Gordon Todd (431.1 hours), Benjamin Beaton (687.3 hours), Morgan Branch (766.1 hours), Cara Viglucci Lopez (180.5 hours), Daniel Hay (280.1 hours), Robin Wright (115.1 hours), and Erin Lyons (440.1 hours). Todd Decl. ¶ 7. Throughout this representation, Plaintiff's counsel have kept contemporaneous time-records that reflect the amount of time spent on this matter each day, along with a description of the tasks performed. These records are entered into a computer database, checked, and maintained in computer-readable format. Billing records for the requested hours are attached as Exhibit 1-B to the Todd Declaration.

---

(4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson*, 650 F.3d at 243-44 (quoting prior Fourth Circuit case applying *Johnson*).

The substantial time invested reflects the complexity of the case and the thoroughness of counsel's representation. While the case had been pending for over a year by the time Sidley Austin assumed representation of Mr. Wyatt, the case was entirely undeveloped. The complaint required substantial amendment, and discovery had not yet even begun. In addition, Mr. Wyatt's counsel fought, and overwhelmingly prevailed on, numerous difficult, highly fact-intensive evidentiary disputes. Counsel, for example, successfully moved to take the deposition of an eventual trial witness who was revealed in Defendants' delayed document productions, and also moved to exclude evidence and testimony concerning a gun and drug paraphernalia allegedly found in Mr. Wyatt's car, his prison sentence, and two purported witnesses first disclosed on the eve of trial. Defendants opposed each of these filings. Defendants also moved unsuccessfully to exclude testimony by Mr. Wyatt's use-of-force expert, evidence of standard police policies or training, or evidence concerning Defendant Worsham's use-of-force history. Losing on any of these motions would have been detrimental to Mr. Wyatt's case and recovery of compensatory and punitive damages. The time invested in researching, drafting, and arguing these motions, therefore, was absolutely necessary and entirely reasonable to effective prosecution of Mr. Wyatt's claim. Plaintiff's counsel also was required to expend additional hours as a result of Defendants' request to continue the trial to accommodate the schedule of a witness they elected ultimately not to call. Finally, Defendants forced Plaintiff's counsel to spend over 70 hours overcoming Defendants' efforts to quash a lawful subpoena, withhold relevant documents, and prevent the deposition of an eventual trial witness. Todd Decl. ¶ 4.

The hours included in this fee petition were necessarily and reasonably expended by appropriate legal personnel. Substantial drafting, discovery, and trial responsibilities were de-

volved to more junior lawyers,[4] and Mr. Beaton, an associate, oversaw day-to-day case management. The requested hours, moreover, reflect several significant reductions in the time actually expended on Mr. Wyatt's behalf:

First, Mr. Wyatt requests fees for only the six attorneys and one paralegal who participated directly in trial:

- Mr. Todd, Mr. Beaton, and Ms. Branch tried Mr. Wyatt's case to the jury and were involved in every stage of case development, discovery, motions practice, and trial strategy.

- Ms. Viglucci Lopez deposed two Defendants and led the damages portion of Mr. Wyatt's claim. She and would have been part of the trial team had this case gone to trial in November 2016 as originally scheduled. Ms. Viglucci Lopez left Sidley Austin in January 2017 to assume the role of head of investigations for a telecommunications company and thus withdrew from the case before trial.

- Mr. Hay and Ms. Wright performed extensive legal research, drafted several motions, and provided legal support before and during trial.

- Ms. Lyons is a paralegal who assisted extensively in this case.

Todd Decl. ¶¶ 5, 7. In addition to these attorneys and support staff, several other attorneys, summer associates, paralegals, and research librarians expended over 400 hours in this case. *Id.* ¶ 8. Those hours, however, are not included in this fee request.

Second, the Petition significantly writes down the hours expended on this case by Ms. Viglucci Lopez. Because Ms. Viglucci Lopez withdrew from the case before trial, her trial responsibilities were redistributed to other attorneys. To avoid any risk of duplication, the Petition

---

[4] More than fifty percent of the requested hours are attributable to two junior associates and a paralegal, who carry the lowest billing rates.

does not seek fees for hours spent by Ms. Viglucci Lopez on trial preparation. Mr. Wyatt seeks fees only for the hours Ms. Viglucci Lopez spent preparing for or conducting depositions and preparing Mr. Wyatt's damages case. Todd Decl. ¶ 8.

Third, Mr. Wyatt does not seek attorneys' fees for hours associated with his motion to amend the complaint to add a supervisory liability claim against Sheriff Taylor. *Id.* Even though a § 1983 plaintiff "should not necessarily be denied fees for hours expended on interim stages of the case in which a ruling was made in favor of the party against whom []he ultimately prevailed," Mr. Wyatt's request does not include this substantial undertaking. *Gierlinger v. Gleason*, 160 F.3d 858, 880 (2d Cir. 1998). Finally, the undersigned has exercised billing judgment to reduce or eliminate the time that may be perceived to have been unnecessary, duplicative, inefficient, or could have been completed by a less experienced attorney. This includes all non-working travel time—a significant write down considering that Mr. Wyatt's attorneys had to travel a minimum of three to five hours for most court hearings, client meetings, and depositions. Todd Decl. ¶ 8. Again, seeking fees for this time would have been reasonable, but this motion takes a more conservative approach. *See Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984) (Posner, J.) ("When a lawyer travels for one client he incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling.").

All told, the requested hours reflect a conservative estimate of the time reasonably and necessarily spent on Mr. Wyatt's case. The petition has reduced or eliminated hundreds of hours (and hundreds of thousands of dollars worth of fees). The remaining hours are the hours the undersigned would charge to a fees-paying client (as are many of the hours that were removed from this fee request). Todd Decl. ¶ 8; *see Hensley*, 461 U.S. at 434. The Court therefore should award fees for all of the requested hours.

**C.    The requested hourly rates are reasonable.**

"'[R]easonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  The Fourth Circuit has recognized that "the relevant legal community is generally that in which the district court sits." *Rum Creek Coal Sales, Inc v. Caperton,* 31 F.3d 169, 179 (4th Cir. 1994); *see also Grissom v. Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008) (the Eastern District of Virginia is "the relevant community"); *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (similar).

The relevant legal market in this case is therefore the Western District of Virginia.  This is consistent with the actual practice in the Western District, where lawyers maintain a regional rather than purely local practice.  *See* Williams Decl. (Ex. 2) ¶ 5; J.B. Rottenborn Decl. (Ex. 3) ¶ 4; P. Beers Decl (Ex. 4) ¶ 6.  Attorneys, however, are not fungible, particularly in a complex civil rights litigation, where the quality of representation may significantly affect a litigant's chances of success claim.  Even within a discrete legal community—or within a single law firm—attorneys' hourly rates "vary widely." *Blum*, 465 U.S. at 895 n.11.  Thus the reasonable rate for a particular lawyer in a particular legal market is informed by factors such as the lawyer's skill, experience, reputation, and billing practices, as well as recent fee awards in similar cases.  *See, e.g.*, *Spell*, 824 F.2d at 1402.

Mr. Wyatt was represented by attorneys from Sidley Austin, one of the oldest, largest, and most prestigious firms in the United States.  The attorneys who represented Mr. Wyatt in this case are all top graduates of elite law schools.  Most completed prestigious appellate clerkships early in their legal career, including two with the U.S. Supreme Court.  The attorneys have represented sophisticated legal clients in complex civil and criminal matters before state and federal

trial, appellate, and administrative courts. The truest testament to counsel's skill and expertise is the exceptional result obtained in this case. Controlling precedent, *e.g. Robinson*, 650 F.3d at 243-44, however, requires further review of counsel's experience, reputation, and legal training. *See* Todd Decl. ¶ 5 & Ex. 1-A.

**Gordon Todd**, a partner, has practiced civil litigation in Washington, D.C., since 2001. He joined Sidley Austin in 2007. Mr. Todd represents plaintiffs and defendants in criminal and civil litigation matters in federal, state, and administrative courts. Before joining Sidley Austin, Mr. Todd held several posts in the U.S. Department of Justice, including Counsel to the Assistant Attorney General for Civil Rights, Special Counsel for Supreme Court Nominations, and Deputy Associate Attorney General. Mr. Todd is a graduate of Princeton University (*cum laude*) and the University of Virginia School of Law (Order of the Coif), and served as a law clerk to judges on the U.S. Supreme Court and the U.S. Court of Appeals for the Eighth Circuit.

**Benjamin Beaton and Cara Viglucci Lopez**, senior associates, have litigated complex and high-profile civil, administrative, and criminal cases at Sidley since 2009 and 2008, respectively. Mr. Beaton graduated with honors from Columbia Law School and Centre College (Phi Beta Kappa), and clerked at the U.S. Supreme Court and the U.S. Court of Appeals for the D.C. Circuit. Ms. Viglucci Lopez is a graduate of Princeton University and Harvard Law School.

**Morgan Branch, Daniel Hay, and Robin Wright**, junior associates, practice in Sidley Austin's civil, criminal, and constitutional litigation practice group. Ms. Branch is a graduate of the University of Georgia and Georgetown University Law Center. Mr. Hay is a graduate of The King's College (*magna cum laude*) and Vanderbilt University Law School (Order of the Coif), where he served as editor in chief of the *Vanderbilt Law Review*. Ms. Wright is a graduate of Washington & Lee University (*magna cum laude*) and the University of Arkansas School of Law

(*magna cum laude*).  Mr. Hay and Ms. Wright both clerked for the U.S. Court of Appeals for the Eighth Circuit; Ms. Wright also clerked for the U.S. District Court for the Western District of Arkansas.  **Ms. Lyons**, a paralegal, has extensive experience assisting in litigation of the firm's complex white collar, Supreme Court, and pro bono matters, including civil-rights cases.

The Fourth Circuit has directed courts to consider attorneys' "actual billing practice" in determining an appropriate hourly rate.  *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 357 (4th Cir. 2009); *Spell*, 824 F.2d at 1402 (same).  Given their skill, experience, and reputation, the members of Mr. Wyatt's legal team ordinarily receive substantial hourly rates for their services, ranging in 2016 from $900 per hour for Mr. Todd (a partner with seventeen years of experience and a substantial trial practice) to $450 per hour for Ms. Branch and Mr. Hay (second-year associates) and $245 per hour for Ms. Lyons (paralegal).  Todd Decl. ¶ 6.  These standard rates account for the attorneys' experience, skills, reputation, and qualifications, and are thus relevant to determining a proper hourly rate for services provided in the Western District of Virginia.

Given the experience and standard billing practice of this legal team, and the prevailing rates in the Western District of Virginia, Mr. Wyatt submits that half of 2016 standard billing rates[5] reflects an appropriate hourly rate in the Western District of Virginia for attorneys of similar skill, experience, and reputation.

---

[5] On January 1, 2017, Sidley raised the hourly rates for each of Mr. Wyatt's attorneys.  Todd Decl. ¶ 6.  Mr. Wyatt does not seek to apply this fee increase in this case, which represents another substantial reduction in the fee request.

| Name | Position | Standard Rate (2016) | Proposed Rate |
|------|----------|----------------------|---------------|
| Gordon Todd | Partner | $900.00 | $450.00 |
| Cara Viglucci Lopez | Senior Associate | $795.00 | $397.50 |
| Benjamin Beaton | Senior Associate | $780.00 | $390.00 |
| Robin Wright | Mid-level Associate | $615.00 | $307.50 |
| Morgan Branch | Junior Associate | $450.00 | $225.00 |
| Daniel Hay | Junior Associate | $450.00 | $225.00 |
| Erin Lyons | Paralegal | $245.00 | $122.50 |

Todd Decl. ¶ 6.

In addition to the experience, reputation, and ability of counsel, other relevant *Johnson* factors further confirm the reasonableness of the requested fees:

**Amount in Controversy and the Results Obtained:**  By any measure, Mr. Wyatt obtained an exceptional result in this case.  A jury awarded Mr. Wyatt $50,000 in compensatory damages for pain, suffering, and emotional distress, and $100,000 in punitive damages against Defendant Worsham in his individual capacity.  Civil-rights cases against law enforcement officers are difficult to win, and even where liability is established, proving damages can be even more difficult where the plaintiff does not have evidence of medical bills.  In addition to the ultimate success at trial, Plaintiff's counsel overwhelmingly succeeded on pretrial motions and overcame substantial resistance by Defendants during discovery.  Defendants were represented by a veteran trial lawyer with substantial experience defending claims against law enforcement officers and agencies.  The exceptional result attained is a testament to Plaintiff's counsel's skill and expertise.

The judgment against Defendant Worsham in this case advanced both of "§ 1983's chief goals of compensation and deterrence."  *Hardin v. Straub*, 490 U.S. 536, 539 (1989); *accord City*

*of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 268 (1981) ("[T]he deterrence of future abuses of power by persons acting under color of state law is an important purpose of § 1983."). In addition to vindicating Mr. Wyatt's constitutional rights and ensuring compensation for his injuries, this judgment should underscore throughout the community the high standard of professionalism and accountability required of officers entrusted with authority to use force for lawful purposes. Thus the measure of success in this case goes well beyond the damages verdict, which is itself substantial, and includes the specific and general deterrence achieved. *See, e.g.*, *Hummel v. Hall*, No. 6:11-CV-00012, 2012 WL 4458450, at *2 & n.5 (W.D. Va. July 18, 2012) (attorneys' fee award exist as an "incentive" for attorneys to take important, but low value, claims that "typically not be brought") (citing *City of Riverside v. Rivera,* 477 U.S. 561, 574 (1986)).

**<u>Fee Awards in Similar Cases</u>:** These proposed rates are in line with recent attorneys' fee awards in comparable cases in this district. They also mirror those from neighboring districts involving counsel from Washington, D.C. law firms. In 2014, this Court awarded attorneys' fees ranging from $230 to $400 per hour for attorneys from Wiley Rein, a distinguished Washington, D.C. law firm comparable in many respects to Sidley Austin—though smaller and less profitable. *See Scott v. Clarke*, No. 3:12-CV-00036, 2014 WL 1463755, at *6 (W.D. Va. Apr. 15, 2014). The *Clarke* court found the plaintiff was entitled to fees associated with efforts to compel discovery wrongfully withheld in a prison-conditions lawsuit. The attorneys in that case represented that their standard billing rates ranged from $420 to $640 per hour, and thus the court-approved fees reflected approximately 55-63% of the attorneys' standard billing. *Id.* at *2. The Court noted that "District of Columbia attorneys with similar high-caliber qualifications" had received top-end compensation in prior cases in the district, and that "even in a more remote division of this district, the rate of $400.00 per hour has been awarded for an experienced attor-

ney's services." *Id.* at \*6 (citing *Quesenberry v. Volvo Grp. N. Am., Inc.*, No. 1:09–cv–00022, 2010 WL 2836201 (W.D. Va. July 20, 2010)). Given the higher standard billing rates for the lawyers in this case and inflation in the legal-services market, the requested fees—which reflect an even more substantial discount relative to standard billing rates—are commensurate with those awarded in *Clarke*.

More recently, a court in the Southern District of West Virginia awarded even higher hourly rates in another civil rights case to attorneys from the Washington, D.C. office of Jenner & Block, a national firm comparable to (though again smaller and less profitable than) Sidley Austin. The plaintiffs in *McGee v. Cole*, 115 F. Supp. 3d 765 (S.D.W. Va. 2015), successfully challenged the state's ban on same-sex marriage, and the Court awarded attorneys from Jenner & Block fees of $500 per hour of partner time, $400 per hour for senior associates, $275 per hour for junior associates, and $100 for paralegal time. *Id.* at 775. The plaintiff's attorneys in this case have not sought fees as high as those awarded in *McGee*. *See also Integrated Direct Marketing, LLC v. Drew May*, 1:14-cv-1183, 2016 WL 3582065 (E.D. Va. June 28, 2016) (awarding $250 to $450 per hour).

**<u>Customary Fee for Like Work</u>:** The declarations from local practitioners attached hereto attest to the reasonableness of the requested fees. Melvin Williams, J. Benjamin Rottenborn, and Paul Beers are experienced and distinguished civil litigators in the Western District of Virginia. Mr. Williams and Mr. Beers in particular have extensive experience litigating federal civil rights claims and attorneys' fees issues in this Court; Mr. Rottenborn as well has litigated cases in this Court as well as § 1983 claims in other federal districts. Williams Decl. ¶¶ 2–4; Beers Decl. ¶¶ 3–5; Rottenborn Decl. ¶ 2. Each has reviewed the pleadings and result in this case and the qualifications of Mr. Wyatt's counsel, and each has affirmed the requested rates are reasona-

ble and consistent with rates charged by attorneys in the Western District of Virginia of comparable experience and qualifications. Williams Decl. ¶¶ 7–8; Rottenborn Decl ¶¶ 7–8; Beers Decl ¶¶ 910.

**Novelty and Difficulty of the Question Raised:** Civil-rights cases are difficult to win, especially where a plaintiff must prove that sworn police officers—who operate with the trust and authority of the public—intentionally violated the rights of an incarcerated plaintiff. *See Gomez v. Gates*, 804 F.Supp. 69, 65 (C.D. Cal. 1992) ("[J]urors want to believe law enforcement officers, and hesitate to punish them for things done, even to excess, while acting in an "on-duty" capacity."); *Weaver v. City of Santa Clara*, 2014 WL 6330402, at *8 (N.D. Cal. Nov. 14, 2014) ("Civil rights cases, especially those involving police misconduct … can be difficult to win."). Despite thousands of § 1983 cases filed in this District in the past decade, few if any have resulted in a jury verdict that a police officer used excessive force in violation of an arrestee's Fourth Amendment rights. *Cf.,* Verdict (ECF No. 93), *Wall v. Loney*, No. 7:13-cv-00587 (W.D. Va. Mar. 9, 2015) (rejecting Eighth Amendment excessive force claim, but awarding $2,500 on pendent common-law claims). Awards of punitive damages are even rarer.

**Skill Required to Properly Perform the Legal Services Rendered:** Plaintiff's success in this case is the result of counsel's dogged effort and effective legal strategy. At numerous junctures, Defendants sought (almost always unsuccessfully) to delay, withhold, or exclude disclosure of information that would ultimately be offered at trial. Plaintiff, further, enjoyed overwhelming success on Defendants' motions to exclude critical trial evidence, including Plaintiff's police-practices expert and video evidence of Mr. Wyatt's condition immediately following the beating.

17

**Attorneys' Opportunity Costs and Expectations at the Outset:** Mr. Wyatt's attorneys have expended thousands of hours in this case, which otherwise could have been spent in the representation of fees-paying clients. The hours spent representing Mr. Wyatt bear a standard market value of more than $2.2 million, over $2 million of which was attributable to the attorneys and paralegal for whom Mr. Wyatt requests fees. Sidley Austin made this investment in Mr. Wyatt's case despite knowing that compensation for these fees would be (at best) uncertain, deferred, and partial. Sidley Austin also advanced over $150,000 in costs and expenses—some of which, such as expert fees, will not be fully compensable. *See infra* Part III.

This investment of time and resources was particularly substantial considering the paltry resources otherwise available to Mr. Wyatt. Mr Wyatt is a poor man and has been sentenced to a term of imprisonment that runs most if not all of his actuarial life. *See* ECF No. 40 (recognizing Mr. Wyatt's indigency). There could never be any expectation or possibility that Mr. Wyatt could pay for private counsel. From the outset, it was clear that Mr. Wyatt's attorneys would be compensated—if at all—through an attorneys' fee award at the conclusion of the case. A substantial hourly rate is appropriate here to reward counsel for the financial risks taken in this case and to incentivize other attorneys to take on such cases.

**Undesirability of the Case:** The undesirability of taking on this case is borne out by Mr. Wyatt's unsuccessful efforts to find an attorney willing to represent him in this matter. A. Wyatt Decl. (Ex. 5) ¶ 2. As a result, Mr. Wyatt filed his initial complaint pro se and litigated on his own from prison for over a year and a half until Sidley Austin assumed the representation. It is easy to see why this case would have been undesirable to an experienced litigator: the relatively low value of Mr. Wyatt's claims (considering the time and expenses necessary to adequately litigate the case), Mr. Wyatt's inability to pay even his costs, the difficulty of prevailing in a § 1983

claim against sworn law enforcement officers, Defendants' standing in the community, and Mr. Wyatt's status as a convicted felon.

*      *      *

Plaintiff has met his burden of showing that the requested hourly rate is reasonable within the legal community where the district court sits. The *Johnson* factors confirm the reasonableness of this rate, and if anything support an enhancement over the lodestar fee given counsel's significant opportunity costs, the substantial financial and reputational risks associated with taking this case, and the undesirability of taking on Plaintiff's case in the local legal community. *See, e.g.*, *Hensley*, 461 U.S. at 434 ("[I]n some cases of exceptional success an enhancement award may be justified.") Mr. Wyatt, however, does not seek a fee enhancement, but instead seeks only fees that are in line with recent attorney awards in other civil rights cases involving similar Washington, D.C. firms. The Court therefore should adopt Plaintiff's proposed rate and apply it against the previously described hours.

### D.    Plaintiff's fee award should equal $858,491.25.

Multiplying the time worked by each attorney by the reasonable hourly rate for those attorneys' and non-attorney staff's service yields the following calculation:

| Attorney / Staff | Hours | Rate | Total |
|---|---|---|---|
| Gordon Todd | 431.1 | $450.00 | $193.995.00 |
| Benjamin Beaton | 687.3 | $390.00 | $268,047.00 |
| Cara Viglucci Lopez | 180.5 | $397.50 | $71,748.75 |
| Morgan Branch | 766.1 | $225.00 | $172,372.50 |
| Daniel Hay | 280.1 | $225.00 | $63,022.50 |
| Robin Wright | 115.1 | $307.50 | $39,393.25 |
| Erin Lyons | 440.1 | $122.50 | $53,912.25 |
| **Total** | **2,900.3** | | **$858,491.25** |

Because Plaintiff has met his burden of showing that the claimed hours and requested hourly rates are reasonable, the resulting fee award is presumptively reasonable. *See Blum*, 465 U.S. at 1548. Mr. Wyatt therefore respectfully requests the Court to enter a judgment ordering an award of attorneys' fees in the amount of $858,491.25, plus post-judgment interest.[6]

### III.    Mr. Wyatt Is Entitled to Costs and Expenses.

In addition to reasonable attorneys' fees, a successful § 1983 plaintiff is also "entitled, under § 1988, to recover 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'" *Spell*, 852 F.2d at 771 (quoting *Northcross v. Board of Educ. of Memphis City Schools,* 611 F.2d 624, 639 (6th Cir. 1979)). Sidley Austin has incurred and advanced $127,700.81 in costs and expenses in this litigation, not including expert fees and expenses. Todd Decl. ¶ 9. These expenses were necessarily incurred and are the type of out-of-pocket expenses normally billed to fee-paying clients. *Id.* As such, they are recoverable costs and expenses. *See Spell*, 852 F.2d at 771. At this time, detailed records of the recoverable costs and expenses are not yet finalized. As soon as they are fully accounted for, counsel for Mr. Wyatt will submit a supplemental declaration and records accounting in detail for these requested costs and expenses.[7]

Sidley Austin also advanced over $20,000 to cover fees and expenses for Mr. Wyatt's trial experts: Dennis Waller and Dr. Jeffrey Smith. Despite the necessity of these expenses, however, federal law limits expert fees to $40 per day, including time spent traveling to and from tri-

---

[6] The Court should order post-judgment interest from the day of the entry of judgment. *See Haddad Motor Grp., Inc. v. Karp, Ackerman, Skabowski & Hogan, P.C.*, 716 F. Supp. 2d 161, 162 (D. Mass. 2010) ("The majority of circuits … hold that interest begins accruing upon entry of the merits judgment.").

[7] Counsel for Mr. Wyatt has discussed the possibility of a more detailed supplemental filing with Defendants' Counsel, who raised no objection.

al or a deposition.  28 U.S.C. §§ 1821(b), 1920(3).  The statute also permits actual cost or mileage for expert travel expenses, plus a subsistence allowance not to exceed the per diem rate established by the General Services Administration.  *Id.* § 1821(c)–(d).  The current per diem rate for Danville, Virginia, is $142 ($91 for lodging and $51 for meals and incidentals).  FY2017 Per Diem Rates for Virginia, GSA, https://www.gsa.gov/portal/category/100120 (last accessed May 19, 2017).

Mr. Waller was deposed in this case, testified at trial, consulted with plaintiff's counsel throughout the trial, and traveled between Danville and his home in Wisconsin.  Mr. Waller traveled using regular coach airfare and stayed in a hotel in Danville during trial.  Dr. Smith, who was not deposed, traveled to and from Danville by car on the date of his testimony (though did not submit a request for mileage).  Mr. Wyatt is therefore entitled to $2,047.57 in expert fees and expenses:

|  | **Mr. Waller** | **Dr. Smith** |
|---|---|---|
| **Expert Fee (Deposition)** | $40 | -- |
| **Expert Fee (Trial)** | $200 | $40 |
| **Travel Costs** | $1,057.57 (Common Carrier) | -- |
| **Subsistence Allowance** | $710 | -- |
| **Total** | **$2,007.57** | **$40** |

Todd Decl. ¶ 10 & Ex. 1-C.

Plaintiff respectfully requests the court order compensation for allowable costs and expenses in the amount of $129,748.38, plus post-judgment interest and subject to a supplemental accounting of non-expert costs and expenses.

## CONCLUSION

Mr. Wyatt respectfully requests that this Court award reasonable attorneys' fees, litigation expenses, and costs as requested.

Dated: May 19, 2017

Respectfully submitted,

/s/ Gordon D. Todd
Gordon D. Todd
Benjamin Beaton
Morgan Branch
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
T: (202) 736-8000
F: (202) 736-8711
gtodd@sidley.com
*Counsel for Michael E. Wyatt*

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2017 I caused a copy of the foregoing Memorandum in Support of Motion for Attorneys' Fees, Expenses, and Costs to be served via ECF on the following counsel:

Jim H. Guynn, Jr.
Theresa Joan Fontana
Guynn & Waddell, PC
415 S. College Avenue
Salem, VA 24153
T: (540) 387-2320
F: (540) 389-2350
jimg@guynnwaddell.com
*Counsel for Defendants*

/s/ Gordon D. Todd

23