IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL E. WYATT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 7:14cv492 |
| | ) |
| JOHNNY OWENS, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF THE APPLICATION OF PLRA FEE LIMITS TO THIS CASE

Defendant Robert Worsham, by counsel, respectfully submits this memorandum and requests that the Court apply the fee limitations imposed by the PLRA under 42 U.S.C. §§ 1997e(d)(1)-(3).

## BACKGROUND

After a four-day trial in this 42 U.S.C. § 1983 case, the jury found that Defendant Robert Worsham used excessive force during the arrest of Plaintiff Michael E. Wyatt. The jury awarded Wyatt $50,000 in compensatory damages and $100,000 in punitive damages. Plaintiff now seeks attorneys' fees of $850,764.00, and costs of $129,748.38, plus post-judgment interest. The parties filed briefs addressing the amount of the fee request.

The Court then ordered the parties to file simultaneous briefs on the issue of "whether the award of attorneys' fees in this action is governed by the PLRA, and thus whether the limits under § 1997e apply to Wyatt's fee request." Order, ECF No. 194. Applying the rules of statutory construction, the limits described in § 1997e should apply.

1

## I. RULES OF STATUTORY CONSTRUCTION DICTATE THAT THE PLRA APPLIES.

Generally, "[s]tatutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of the language accurately expresses the legislative purpose." *Park'n Fly v. Dollar Park & Fly*, 469 U.S. 189, 194 (1985). "[W]hen the terms of a statute are clear and unambiguous, [the court's] inquiry ends and [it] should stick to [its] duty of enforcing the terms of the statute as Congress has drafted it." *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 305 (4th Cir. 2000) (citing *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). Only in "exceptionally rare" circumstances can the court look beyond the plain meaning of an unambiguous statute to discern its meaning: "if a literal reading of a statute produces an outcome that is 'demonstrably at odds' with clearly expressed congressional intent to the contrary, *id.* (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989)), or results in an outcome that can truly be characterized as absurd." *Id.* (citing *Maryland State Dep't of Educ. v. United States Dep't of Veterans Affairs*, 98 F.3d 165, 169 (4th Cir. 1996)). For purposes of the "absurdity" exception, conduct that is "absurd" is that which is "so gross as to shock the general moral or common sense." *Crooks v. Harrelson*, 282 U.S. 55 (1930). In such circumstances, courts may look to the legislative history to determine Congress' intent. *Sigmon*, 226 F.3d at 304. Notably, however, "[t]he intent of Congress as a whole is more apparent from the words of the statute itself than from a patchwork record of statements inserted by individual legislators and proposals that may never have been adopted by a committee, much less an entire legislative body—a truth which gives rise to 'the strong presumption that Congress expresses its intent through the language it chooses.'" *Id.* at 304-05 (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 n.12 (1987)).

2

When assigning meaning to statutory language, there are two rules particularly applicable to this case. For one, "a statute must, if possible, be construed in such fashion that every word has some operative effect." *United States v. Mills*, 485 F.3d 219, 223 (4th Cir. 2007) (citing *United States v. Robertson*, 474 F.3d 538, 540 n. 2 (8th Cir. 2007) (quoting *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 36 (1992)). Additionally, "[i]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *Bfp v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994). With these rules in mind, it is apparent that the fee limits of the PLRA apply to *all* prisoner claims in which attorney's fees are authorized under Section 1988, regardless of whether those claims arose before or during a prisoner's incarceration.

In relevant part, the PLRA caps on fees and hourly rates apply to "*any* action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988." 42 U.S.C. § 1997e(d)(1) (emphasis added). As the Court noted in its Order, ECF No. 194, it is not disputed that Wyatt is a "prisoner" under this Section. *See* § 1997e(h) ("prisoner" defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law . . ."). The question is whether "any action" really means "any action," *i.e.* any civil rights actions brought by prisoners, irrespective of whether it arose prior to or during their incarcerations, or if it pertains only to those prisoner lawsuits arising from the conditions of their confinement. The plain meaning of "any," *i.e.* "[t]he whole amount of; all," American Heritage Dictionary p. 117 (2d College ed. 1985), is unambiguous. Section § 1997e does not exclude lawsuits arising prior to a prisoner's incarceration. Furthermore, rejecting the plain meaning of "any" would conflict with the established principle that when possible, every word in the statute

3

must be construed to have "some operative effect." *Nordic Vill. Inc.*, 503 U.S. at 36. Here, Congress gave no indication that "any" should not have the same effect that it does in ordinary language.

Moreover, in other sections of § 1997e, Congress *did* limit its applicability to only actions brought "with respect to prison conditions." *See* §§ 1997e-(a), -(c)(1), -(f)(1). Accordingly, we must presume that Congress intentionally limited some sections of the PLRA while others remained broad. *See Bfp*, 511 U.S. at 537 ("[i]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another"). If all sections of § 1997e were meant to apply only to actions concerning conditions of confinement, there would be no reason for Congress to insert that language in some sections but not others. Applying the appropriate rules of statutory construction, the PLRA attorneys' fees cap should apply to *any* civil rights action by a prisoner, including this action by Mr. Wyatt.

## II. APPLYING § 1997e(d) TO ALL PRISONER CASES SEEKING FEES UNDER § 1988 IS NOT DEMONSTRABLY AT ODDS WITH CLEARLY EXPRESSED CONGRESSIONAL INTENT NOR IS IT ABSURD.

As mentioned *supra*, only in extremely rare circumstances may a court look beyond a statute's plain and unambiguous meaning: if a literal interpretation would "frustrate Congress's clear intention or yield patent absurdity." *Dunn v. Cftc*, 519 U.S. 465, 470 (1997). Neither of those circumstances are present here. Accordingly, the Court is "'obligat[ed] . . . to apply [§ 1997e] as Congress wrote it.'" *Id.* (quoting *Hubbard v. United States*, 514 U.S. 695, 703 (1995)).

It is well established that the goal of the PLRA is to limit frivolous lawsuits by prisoners. *McLean v. United States*, 566 F.3d 391, 397 (4th Cir. 2009). Applying the fee limits to all civil

4

rights lawsuits initiated by prisoners, without regard to when the cause of action arose, does not frustrate that goal. Nor does it result in an interpretation that is "so gross as to shock the general moral or common sense." *Crooks v. Harrelson*, 282 U.S. 55, 59-60 (2000). Instead, applying the PLRA fee limits to cases like Wyatt's furthers the Act's purpose.

Whether or not an inmate's lawsuit arises from the conditions of his confinement, it is the prisoner's confinement that drives him to file a frivolous lawsuit. As aptly put by the Tenth Circuit,

> The balance of incentives and disincentives for filing suit is quite different for prisoners than for free persons, regardless of the subject matter of the claim, whether it be prison conditions or preincarceration conduct. Free persons must weigh the value of a possible victory in court against the burdens on their time and wallets in pursuing litigation. Prisoners, in contrast, have time in abundance, do not need money for their own necessities, and are entitled to free legal assistance or access to legal materials. And what may be perceived as burdens to free persons, such as taking time for depositions or court appearances, may well be considered an attractive change of scenery for prisoners.

*Robbins v. Chronister*, 435 F.3d 1238, 1244 (10th Cir. 2006). Restricting attorneys' fee awards helps avoid frivolous claims by creating a disincentive for those claimants with meritless lawsuits who desire merely a "change of scenery." Certainly this interpretation, which advances the Act's goals, is not "absurd."[1] As such, the Court is bound by the terms of the statute. *See Dunn*, 519 U.S. at 470 (if the statutory interpretation does not frustrate Congress's clear intention or yield absurd results the court must apply the statute as written). Thus, § 1997e should apply to fee awards in all civil rights prisoner cases. Wyatt may not escape application of the PLRA in this case.

---

[1] It is not enough to reject the plain meaning of statutory language simply because Congress may not have anticipated the result compelled by that language in a particular case. *See Brogan v. United States*, 522 U.S. 398, 403 (1998) ("It is not, and cannot be, our practice to restrict the unqualified language of a statute to the particular evil that Congress was trying to remedy—even assuming that it is possible to identify that evil from something other than the text of the statute itself").

5

### III. *SUTTON* IS DISTINGUISHABLE FROM THIS CASE.

The Court referenced *Sutton v. City of Yonkers*, 2017 U.S. Dist. LEXIS 46853 (S.D.N.Y. March 29, 2017) as an example of a court that held PLRA fee limitations apply only to civil rights claims challenging prison conditions. However, *Sutton* is distinguishable from the instant case. In *Sutton*, the Court evaluated whether the fee cap applied where the events giving rise to the lawsuit occurred prior to the inmate's incarceration *and were unrelated* to his incarceration. *Id.* at *7. The Court noted that its holding "arguably" did not apply to cases involving suits challenging the circumstances of "the arrest and prosecution that led to the prisoner's" present incarceration. *Id.* Here, Wyatt's civil rights claim is based on the arrest that led to his incarceration. As such, the *Sutton* court would not likely reach the same result in this case.

### CONCLUSION

For the foregoing reasons, Defendant Robert Worsham, by counsel, respectfully requests that the Court apply the fee cap imposed by PLRA § 1997e to this case.

    ROBERT WORSHAM

    By /s/ Jim H. Guynn, Jr.
    Jim H. Guynn, Jr. (VSB # 22299)
    Guynn & Waddell, P.C.
    415 S. College Avenue
    Salem, Virginia  24153
    Phone: 540-387-2320
    Fax:    540-389-2350
    Email: jimg@guynnwaddell.com
    *Attorney for Defendant Robert Worsham*

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 2nd day of August, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Gordon D. Todd, Esq.
Benjamin Beaton, Esq.
Morgan Branch, Esq.
Sidley Austin, LLP
1501 K Street, NW
Washington, DC 20005
gtodd@sidley.com
bbeaton@sidley.com
mbranch@sidley.com

/s/ Jim H. Guynn, Jr.
Jim H. Guynn, Jr. (VSB # 22299)
Guynn & Waddell, P.C.
415 S. College Avenue
Salem, Virginia 24153
Phone: 540-387-2320
Fax: 540-389-2350
Email: jimg@guynnwaddell.com
*Attorney for Defendant Robert Worsham*

7