IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

|                              |                                    |
|------------------------------|------------------------------------|
| Michael E. Wyatt,            |                                    |
|     Plaintiff,               |                                    |
|     v.                       | Case No. 7:14-cv-492-NKM-RSB       |
| Johnny Owens, *et al.*,      |                                    |
|     Defendants.              |                                    |

PLAINTIFF'S MEMORANDUM OF LAW ON THE
INAPPLICABILITY OF 42 U.S.C. § 1997e

Plaintiff Michael Wyatt respectfully submits this Memorandum of Law in response to the Court's Order of July 19, 2017, directing the parties to address whether any fee award in this matter is governed by the Prison Litigation Reform Act ("PLRA"), and specifically by 42 U.S.C. § 1997e.

The PLRA restricts attorneys' fees available in "action[s] challenging prisoners' conditions of confinement." *Scott v. Clarke*, 2014 WL 1463755, at \*3 (W.D. Va. Apr. 15, 2014) (Moon, J.). It does not limit the "reasonable attorney's fee" authorized by 42 U.S.C. § 1988(b) for a "prevailing party" in an action seeking redress for a violation of constitutional rights that predates the plaintiff's incarceration and does not relate to the plaintiff's confinement. Because Mr. Wyatt prevailed on a claim that arose before his incarceration and that is entirely unrelated to any condition of confinement, § 1997e does not apply in this action. Additionally, recognizing the PLRA's inapplicability, Defendant Worsham asserted no PLRA-defense in

response either to Mr. Wyatt's suit or to his fee petition. Worsham has, therefore, forfeited any such defense.

**I.      The PLRA's Fee Restrictions Apply Only to Suits Challenging Prison Conditions.**

As the Fourth Circuit and this Court have recognized, Congress enacted the PLRA "to reduce the ever-growing number of *prison-condition lawsuits*." *Wilkins v. Gaddy*, 734 F.3d 344, 349 (4th Cir. 2013) (emphasis added). It did so in part by limiting attorneys' fees available in "action[s] challenging prisoners' conditions of confinement." *Scott*, 2014 WL 1463755, at *3–4 ("Defendants are incorrect in assuming that, simply because the Plaintiffs are prisoners, the provisions of § 1997e(d) necessarily govern …."); *see Alexander S. ex rel. Bowers v. Boyd*, 113 F.3d 1385 (4th Cir. 1997) ("Prior to the enactment of the PLRA, a plaintiff in *a prison conditions lawsuit* obtained attorney's fees solely through [§] 1988.") (emphasis added); *cf. Porter v. Nussle*, 534 U.S. 516, 532 (2002) (PLRA exhaustion requirement "applies to all inmate suits *about prison life*") (emphasis added). The PLRA's text, structure, and purpose all confirm that its fee limitation applies only to suits challenging prison conditions, and not to suits that predate and are unrelated to confinement. To read the statute otherwise would contradict the PLRA's text and purpose, undermine the goals of § 1988(b), and unnecessarily call in question the constitutionality of § 1997e(d) as applied here.

**A.      The PLRA's Text and Structure Demonstrate that the Fee Restriction Applies Only to Prisoner Suits Challenging Conditions of Confinement**

The Act's structure and text well support the conclusion that Congress enacted the PLRA to address prison-condition lawsuits, and did not restrict the recovery of attorney fees in prisoners' civil rights cases generally.

The PLRA added § 1997e to the previously enacted Civil Rights of Institutionalized Persons Act ("CRIPA"), which provides "redress in cases involving deprivations of rights of

institutionalized persons." Pub. L. No. 96-247, 94 Stat. 349, 349 (1980) (codified at 42 U.S.C. § 1997–1997j); *see, e.g.*, *Hadix v. Johnson*, 144 F.3d 925, 946–47 (6th Cir. 1998) ("Section 803(d) of the PLRA amended [CRIPA], as it applied to awards of attorney fees" by "limit[ing] attorney fees authorized *in prison litigation*."). CRIPA empowers the United States to take action where a State has subjected "persons residing in or confined to an institution … to egregious or flagrant conditions which deprive such persons of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 42 U.S.C. § 1997a(a). To bring such an action the Attorney General must specify the "alleged conditions which deprive rights, privileges, or immunities secured or protected by the Constitution or laws of the United States," and the relief necessary to redress them. *Id.* § 1997b. CRIPA also authorizes the United States to intervene into any suit filed by or on behalf of a prisoner "seeking relief from egregious or flagrant conditions." *Id.* § 1997c. CRIPA further prohibits retaliation against any person "reporting conditions which may constitute a violation." *Id*. § 1997d. And, Congress took care to note that CRIPA does not prejudice any other existing rights or claims that institutionalized persons may have relating to their conditions of confinement. *Id*. § 1997j. In sum, CRIPA reflects "intent of Congress that deplorable *conditions in institutions* covered by this Act amounting to deprivations of rights protected by the Constitution or laws of the United States be corrected." *Id.* § 1997g (emphasis added).

The PLRA amended CRIPA by adding § 1997e, and that statute is entirely consistent with CRIPA's framework and similarly focused on litigation over "conditions in institutions." *See* Prison Litigation Reform Act, S. 1275, 104th Cong. (1995) ("To provide for appropriate remedies for prison condition lawsuits, to discourage frivolous and abusive prison lawsuits, and for other purposes.").

Indeed, the first subsection of § 1997e establishes the scope of the provision by requiring exhaustion of administrative remedies before any "action [may] be brought *with respect to prison conditions*." *Id.* § 1997e(a) (emphasis added). Next, it authorizes district courts to "dismiss any action brought *with respect to prison conditions* … if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1997e(c)(1) (emphasis added). Moreover, it provides that a claim for "mental or emotional injury *suffered while in custody*" may proceed only upon "a prior showing of physical injury or the commission of a sexual act." *Id.* § 1997e(e)(1) (emphasis added). Lastly, it encourages the use of telephonic or video technology in "any action brought *with respect to prison conditions*" such that hearings may be conducted "without removing the prisoner from the facility in which the prisoner is confined." *Id.* § 1997e(f)(1) (emphasis added).[1] Thus, pre- and post-amendment, CRIPA uniformly concerns lawsuits relating to conditions of confinement in state institutions.

In § 1997e(d), Congress provided that "[i]n any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded," unless the fee award satisfies various conditions and restrictions. The question here is whether "any action" refers to the same class of prison condition lawsuits regulated by the balance of CRIPA and § 1997e—or instead reaches any suit a prisoner might bring, including those that arose before, and are unconnected to, his confinement. The fee restrictions clearly reach only the former.

---

[1] Provisions of the PLRA codified elsewhere similarly regulate "remedies with respect to prison conditions." 18 U.S.C. § 3626.

As an initial matter, expanding § 1997e(d) to cover even civil rights claims that accrued before the plaintiff was incarcerated could be achieved only by divorcing that subjection from the rest of § 1997e, and from the PLRA and CRIPA generally. But the Court's "duty … is to construe statutes, not isolated provisions." *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) (quoting *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 290 (2010)). In interpreting statutory schemes, courts are "obliged to look at the statutory language as a whole, construing each section in harmony with every other part or section." *Sijapati v. Boente*, 848 F.3d 210, 215 (4th Cir. 2017) (quotation omitted). When § 1997e and CRIPA are properly "read … as a whole," the attorney-fee restriction cannot reach any and all suits on any and all subjects potentially compensable under § 1988. *See Ayes v. U.S. Dep't of Veterans Affairs*, 473 F.3d 104, 108 (4th Cir. 2006). To read § 1997e(d) in isolation, by contrast, would do violence to the statutory scheme and would require repetitive and redundant statutory drafting. It would be inappropriate to ignore the surrounding statutory text and context, which clearly relate to "conditions of confinement."

Construing the PLRA to limit the fees in this case would also contravene the well-established principle that civil rights statutes and remedial statutes, such as §§ 1983 and 1988, are to be construed broadly. *See, e.g.*, *Dennis v. Higgins*, 498 U.S. 439, 445 (1991) ("[W]e have given full effect to [§ 1983's] broad language, recognizing that § 1983 provides a remedy, to be broadly construed, against all forms of official violation of federally protected rights.") (quotation and alteration omitted). "Section 1988's legislative history," courts have recognized, "contains statements urging courts to use 'the broadest and most effective remedies available to achieve the goals of our civil rights laws.'" *Shaw v. Hunt*, 154 F.3d 161, 166 (4th Cir. 1998) (quoting Senate Report); *see also In re Perry*, 882 F.2d 534, 544 (1st Cir. 1989) ("Civil rights

statutes like 42 U.S.C. §§ 1983, 1988 are to be construed generously to effectuate their salutary purposes."); *Gates v. Collier*, 616 F.2d 1268, 1275 (5th Cir. 1980) ("Courts have taken an extremely liberal view on nearly every interpretive question that has arisen thus far under Section 1988."). At the same time, exemptions from such remedial statutes "should be narrowed and limited to effect the remedy intended." *Piedmont & N. Ry. Co. v. Interstate Commerce Comm'n*, 286 U.S. 299, 311–12 (1932); *Olsen v. Lake Country, Inc.*, 955 F.2d 203, 206 (4th Cir. 1991) ("[W]e recognize the general rule of construction that exemptions from remedial statutes are to be construed narrowly.").

Extending § 1997e(d) to this case would turn these canons of construction on their heads. Limiting Wyatt's fees would narrow the remedial scope of § 1988, a provision the Fourth Circuit has recognized is essential "to ensur[ing] effective access to the judicial process for persons with civil rights grievances." *Lefemine v. Wideman*, 758 F.3d 551, 555 (4th Cir. 2014) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)). This narrowing would be accomplished only by expansively reading the PLRA far beyond what its text, structure, or purpose require.

The phrasing of § 1997e(d), moreover, shows that Congress intended for this provision, like those that surround it, to apply only to prison-condition lawsuits. While § 1997e(d) does not repeat the subject matter limitation previously introduced in § 1997e(a), § 1997e(d) is unquestionably directed to suits either seeking "*court ordered relief* for [a] violation" or "enforcing *the relief* ordered for the violation." *Id.* § 1997e(d)(1)(B)(i)&(ii) (emphases added). The restrictions on attorney fees set forth in § 1997e(d)(2) and (d)(3), in turn, apply only to that subset of such actions where the plaintiff *also* secures "a monetary judgment" award. *Id.* § 1997e(d)(2). "Court-ordered relief" connotes judicially issued injunctive or other equitable relief of the sort a court may issue to halt or modify an improper condition of confinement—not

the type of monetary relief juries are empowered to award. *See Black's Law Dictionary* 1291–92 (6th ed. 1994)[2] (defining "relief" as "Deliverance from oppression, wrong, or injustice …, particularly in equity."). Had Congress intended for § 1997e(d) to cover all civil rights actions regardless of whether they address conditions of confinement, it would have made little sense to place that provision in the middle of a statute otherwise focused on prison-condition lawsuits, and have been stranger still to use language describing the equitable, rather than legal, remedies courts are asked to award in prison-condition cases.

Mr. Wyatt's case falls entirely outside this scheme. His claims arose before he was incarcerated. They do not relate to any condition of the confinement, which entirely post-dated Investigator's Worsham's constitutional violation. When Mr. Wyatt was beaten, he was not an incarcerated felon, but only civilian suspect.

As the Court noted in its Order, courts have disagreed on this issue. But compelling authorities agree with Mr. Wyatt that the "action" limited by § 1997e(d) is one regarding conditions of confinement that accrues while the plaintiff is incarcerated. The attorneys' fees cap, therefore, does not apply to suits regarding unrelated, pre-confinement civil rights violations.

Most recently, in *Sutton v. City of Yonkers*, No. 13 Civ. 801, 2017 WL 1180918 (S.D.N.Y. Mar. 29, 2017), the court determined correctly that § 1997e(d) does not limit attorneys' fees in cases that arose before the plaintiff was incarcerated. There, after the plaintiff prevailed on his § 1983 claim alleging false arrest, the magistrate judge *sua sponte* raised the

---

[2] The PLRA was enacted in 1996. The contemporary edition of *Black's* likewise emphasizes that court-ordered relief is equitable, not legal, in nature. *See Black's Law Dictionary* (10th ed. 2014) ("The redress or benefit, esp. equitable in nature (such as an injunction or specific performance), that a party asks of a court.").

question whether the PLRA capped the fees available under § 1988 and ruled that it did. *Id.* at *1. Disagreeing with the magistrate, the district judge concluded that § 1997e(d), like the PLRA itself, was "was aimed primarily at prisoners' suits challenging prison conditions." *Id.* at *3 (quoting *Reyes v. Keane*, 90 F.3d 676, 678 (2d Cir. 1996)). There, as here, the plaintiff's suit was unrelated to the conditions of his confinement. Similarly, in *Hall v. Galie*, the court applied the "whole act rule" of interpretation and concluded that the "PLRA limitations on attorney's fees do not apply to actions based exclusively upon pre-incarceration civil rights violations." No. 05-975, 2009 WL 722278, at *5-7 (E.D. Pa. Mar. 17, 2009); *see also Hatchett v. Cty. of Philadelphia*, No. 09-1708, 2010 WL 4054285, at *2 (E.D. Pa. Oct. 15, 2010) ("[T]he PLRA only applies to cases brought by prisoners with respect to prison conditions. It does not apply to actions based on civil rights violations that occurred when the prevailing party was not a prisoner.").

The two decisions reaching contrary conclusions are inapposite and unpersuasive. In *Robbins v. Chronister*, 435 F.3d 1238 (10th Cir. 2006), the Tenth Circuit did not grapple with the issues implicated by Mr. Wyatt's case because the plaintiff there "d[id] not contest" that § 1997e(d) applied to pre-incarceration civil-rights violations. The court therefore did not confront the PLRA's text, structure, and purpose, but instead, focused exclusively on the plaintiff's invocation of the absurdity doctrine. *Id.* at 1241. Nor does *Jackson v. State Bd. of Pardons and Paroles*, 331 F.3d 790 (11th Cir. 2003), resolve the question whether § 1997e limits attorney fees for pre-incarceration civil-rights violations. The plaintiff in *Jackson* challenged his denial of a parole hearing—which concerns his "confinement" under the PLRA and CRIPA in a way Wyatt's pre-incarceration beating does not. *Id.* at 792. In any event, *Jackson* (like *Robbins*) did not read § 1997e "as a whole," *Ayes*, 473 F.3d at 108, but instead viewed the fee provision in

isolation "without addressing the other sections of the PLRA … for additional clarification," *Hall* 2009 WL 722278, at *5-6 (rejecting *Jackson*'s applicability to suits about pre-incarceration conduct). Thus, the only courts to have fully and squarely addressed the question whether § 1997e(d) applies to pre-confinement civil rights violations unrelated to prison conditions have held that it does not.

### B. The PLRA's Legislative History Corroborates the Limitation of the Fee Provision to Suits Challenging Conditions of Confinement

As noted above, the PLRA amended but did not fundamentally alter CRIPA's scheme governing prison conditions. The Fourth Circuit has acknowledged that Congress adopted "the PLRA … in an effort to reduce the ever-growing number of *prison-condition lawsuits* that were threatening to overwhelm the capacity of the federal judiciary." *Wilkins*, 734 F.3d at 349 (4th Cir. 2013) (emphasis added) (quotation omitted). The Second and D.C. Circuits have similarly observed that "Congress was concerned about 'frivolous litigation by prisoners challenging conditions of their confinement.'" *Jones v. Smith*, 720 F.3d 142, 147 (2d Cir. 2013) (quoting *Blair-Bey v. Quick*, 151 F.3d 1036, 1040 (D.C. Cir. 1998)).

Nothing in the legislative record suggests Congress intended to limit attorneys' fees in cases completely unrelated to the conditions of a plaintiff's incarceration. To the contrary, the record and legislative debate focus consistently on the need to "restore balance to prison conditions litigation." 141 Cong. Rec. S14418 (daily ed. Sept. 27, 1995) (Sen. Hatch). In the PLRA, Congress balanced the importance of remedies for "prison conditions that actually violate the Constitution" against concerns that "courts have gone too far in micromanaging our Nation's prisons." *Id.* It aimed to "stop this ridiculous waste of taxpayer money" on suits over matters such as prison-issued clothing and property-damage in cells by "wrest[ing] control *of our prisons from the lawyers and inmates.*" *Id.* (emphasis added); *see also id.* S14626 (daily ed. Sept. 29,

1995) (Sen. Dole) (the PLRA "establishes some tough new guidelines for Federal courts when evaluating *legal challenges to prison conditions*") (emphasis added); *id.* S14418 (daily ed. Sept. 27, 1995) (statement of Sen. Kyl) (PLRA would curb expansive judicial oversight in "prison condition cases").

The attorneys-fee restriction at issue here derived from the Prison *Conditions* Litigation Reform Act, S. 1275, 104th Cong. (1995), which like the PLRA precluded substantial fee awards "simply because the prison has changed preexisting conditions." 141 Cong. Rec. S14317 (daily ed. Sept. 26, 1995) (Sen. Abraham, sponsor of the Prison Conditions Reform Act) ("Only if those conditions violated a prisoner's rights will fees be awarded."). This predecessor version—substantially identical to the attorneys' fee provision ultimately codified in § 1997e(d))—was "aimed at solving a complex, costly, and dangerous problem" of frivolous prison condition lawsuits and far-reaching judicial superintendence of prisons based on "minimal violations," such as "how bright [prisoners'] lights are." *Id.*[3]

By enacting §§ 1983 and 1988, Congress encouraged the pursuit of meritorious civil rights claims. "Section 1988," the U.S. Supreme Court has recognized, "serves an important public purpose by making it possible for persons without means to bring suit to vindicate their rights." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 559 (2010). These cases, Congress recognized, often featured small damages or litigation challenges that might dissuade lawyers

---

[3] Other examples of abusive prison lawsuits highlighted in the congressional record illustrate the PLRA's focus: to discourage federal cases concerning prison conditions, which states and prison administrators could address more readily than federal courts. These costly lawsuits challenged (among other things) food and water temperatures, the locations of electrical outlets, building code inspections, prison barber licensing, "defective" haircuts, insufficient locker space, prison pizza-party invitations, and preferred peanut butter varieties. *See* 141 Cong. Rec. S14419 (daily ed. Sept. 27, 1995) (Sen. Abraham); *id.* S14626 (daily ed. Sept. 29, 1995) (Sen. Dole).

from taking them on. Indeed, "Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process." *See City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986)). In such cases, "attorney's fees are provided … as an incentive (because, if attorney's fees were not awarded, cases such as the instant matter would typically not be brought)." *Hummel v. Hall*, No. 6:11-CV-00012, 2012 WL 4458450, at *2 & n.5 (W.D. Va. July 18, 2012) (Moon, J.). The PLRA and CRIPA, to be sure, limit the scope of those statutory incentives *in the specific context of prison-conditions suits*. But they nowhere suggest any intention to abandon § 1988's purposes more generally and restrict the availability of attorney fees outside that specific context. Because § 1997e(d) operates as an exception to the civil rights remedies created in §§ 1983 and 1988, that provision must be read narrowly to give full effect to Congress's remedial intent. *See, e.g.*, *Olsen v. Lake Country, Inc.*, 955 F.2d 203, 206 (4th Cir. 1991) (applying the "general rule" of narrowly construing " exemptions from remedial statutes").

      **C.**    **Construing § 1997e to Restrict Attorney Fee Awards Other than Prisoner Suits Challenging Conditions of Confinement Would Contravene the Purposes of the PLRA and Section 1988, and Invite Inefficient and Bizarre Results**

The Court should avoid the bizarre and inequitable results that would follow unless § 1997e(d) is interpreted consistently with Congress's clear purpose of curtailing abusive prison condition litigation. "[N]othing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion." *Chesapeake Ranch Water Co. v. Bd. of Comm'rs of Calvert Cty.*, 401 F.3d 274, 280 (4th Cir. 2005) (quoting *In re Chapman,* 166 U.S. 661, 667 (1897)). A civil rights plaintiff who "just happen[s] to be in jail" for reasons unrelated to the lawsuit implicates none of the concerns addressed by the PLRA and its attorneys' fees cap. *See Sutton*,

11

Case 7:14-cv-00492-NKM-RSB   Document 196   Filed 08/02/17   Page 11 of 16   Pageid#: 3653

from taking them on. Indeed, "Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process." *See City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986)). In such cases, "attorney's fees are provided … as an incentive (because, if attorney's fees were not awarded, cases such as the instant matter would typically not be brought)." *Hummel v. Hall*, No. 6:11-CV-00012, 2012 WL 4458450, at *2 & n.5 (W.D. Va. July 18, 2012) (Moon, J.). The PLRA and CRIPA, to be sure, limit the scope of those statutory incentives *in the specific context of prison-conditions suits*. But they nowhere suggest any intention to abandon § 1988's purposes more generally and restrict the availability of attorney fees outside that specific context. Because § 1997e(d) operates as an exception to the civil rights remedies created in §§ 1983 and 1988, that provision must be read narrowly to give full effect to Congress's remedial intent. *See, e.g.*, *Olsen v. Lake Country, Inc.*, 955 F.2d 203, 206 (4th Cir. 1991) (applying the "general rule" of narrowly construing " exemptions from remedial statutes").

    **C.**    **Construing § 1997e to Restrict Attorney Fee Awards Other than Prisoner Suits Challenging Conditions of Confinement Would Contravene the Purposes of the PLRA and Section 1988, and Invite Inefficient and Bizarre Results**

The Court should avoid the bizarre and inequitable results that would follow unless § 1997e(d) is interpreted consistently with Congress's clear purpose of curtailing abusive prison condition litigation. "[N]othing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion." *Chesapeake Ranch Water Co. v. Bd. of Comm'rs of Calvert Cty.*, 401 F.3d 274, 280 (4th Cir. 2005) (quoting *In re Chapman,* 166 U.S. 661, 667 (1897)). A civil rights plaintiff who "just happen[s] to be in jail" for reasons unrelated to the lawsuit implicates none of the concerns addressed by the PLRA and its attorneys' fees cap. *See Sutton*,

2017 WL 1180918, at *4.  Section 1988, by contrast, authorizes an award of attorneys' fees based on a wide range of other constitutional violations, most of which (like Mr. Wyatt's) have nothing to do with corrections facilities.  *See, e.g.*, *Doe v. Kidd*, 656 F. App'x 643 (4th Cir. 2016) (violation of Medicaid Act and ADA); *Lefemine*, 758 F.3d 551 (First Amendment violation); *Hummel*, 2012 WL 4458450 (violation of Truth in Lending Act); *Atkins v. Virginia Dep't of Transp.*, No. 1:13CV00057, 2015 WL 858870, at *1 (W.D. Va. Feb. 27, 2015) (employment discrimination); *Hudson v. Pittsylvania Cty.*, No. 4:11-cv-00043, 2013 WL 4520023, at *4 (W.D. Va. Aug. 26, 2013) (violation of the Establishment Clause).

The alternative construction of this provision would be inefficient and irrational.  It would encourage prisoners and their lawyers simply to wait to adjudicate constitutional claims until after a potential release from custody.  Encouraging delay advances none of the PLRA's interests, and runs contrary to the public's interest in the swift disposition of disputes and resolution of alleged civil rights violations.  Such a construction would also, absurdly, allow the sort of suits that most clearly animated Congress to adopt the PLRA nevertheless to be brought unshackled by § 1997e(d), so long as the prisoner sued after release, while restricting the pursuit of unrelated civil rights claims if the plaintiff happens to be in prison.  *See Hall v. Galie*, 2009 WL 722278, at *6.  Such under- and over-inclusiveness is manifestly not what Congress accomplished by enacting the PLRA.

### D. The Doctrine of Constitutional Avoidance Supports Construing § 1997d Narrowly.

Were § 1997e(d) read to require such arbitrary results, the Court would have to inquire further whether § 1997e(d), as applied in this case, contravenes core constitutional guarantees.  "[T]he principle of constitutional avoidance … requires the federal courts to strive to avoid rendering constitutional rulings unless absolutely necessary."  *Norfolk S. Ry v. City of*

*Alexandria*, 608 F.3d 150, 156–57 (4th Cir. 2010).  This means that courts should avoid interpretations that even "raise[] serious constitutional doubts" as well as rulings that a statute is in fact unconstitutional.  *Clark v. Martinez*, 543 U.S. 371, 381 (2005).

Applying the fees cap to claims unrelated to prison conditions would irrationally treat incarcerated civil rights plaintiffs differently than unincarcerated civil rights plaintiffs.  In enacting the PLRA, Congress aimed to discourage frivolous suits challenging prison conditions, because such cases encouraged abusive filings by prisoners against their guards, wasted taxpayer money, and resulted in federal courts micromanaging state prisons.  It would be irrational to pursue that end by discouraging a different class of lawsuits:  meritorious civil rights suits that are not connected to the plaintiff's incarceration.  Whether § 1997e(d), as applied to pre-incarceration causes of action, violates equal protection or due process is a question this Circuit has not resolved.  In *Wilkins*, the Fourth Circuit upheld § 1997e(d)(2) against a *facial* challenge under the Equal Protection Clause.  734 F.3d at 349–51.  That case, though, involved a prison-conditions claim.  And the rational basis articulated there—curtailing the number of "prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary"—is absent here.  *Id.* at 349.  Thus, notwithstanding the facial validity of § 1997e(d), applying the fees cap in this case would require the Court to assess whether Congress rationally limited constitutional access to courts in these inapposite circumstances.[4]

The Court need not and should not address these constitutional concerns.  Instead, the Court should interpret the PLRA in line with its text, structure, and purpose and find that the attorneys' fees cap does not apply to this action.

---

[4] Applying the PLRA fees cap in this case would also raise Due Process concerns by arbitrarily restricting the ability of Wyatt and similarly situated victims to attract competent counsel.

## II.     Worsham Forfeited the PLRA Defense.

Even if § 1997e(d) imposes some restrictions on the fee award in this case, Worsham has forfeited any such claim.  In his opposition to the fee petition, Worsham *agreed* that the proper fee award should be "calculated according to the prevailing market rates in the relevant community."  ECF No. 190, at 10 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  He acknowledged that § 1988's lodestar formula was the proper "starting point" for a fee analysis.  *Id.* at 6.  Worsham never argued that the PLRA caps either counsel's hourly rate or the total fee award.  Nor did Worsham, earlier in this litigation, rely on the PLRA to avoid answering Wyatt's complaint.  *Compare* ECF Nos. 64 (answer), *with* 42 U.S.C. § 1997e(g) (allowing for waiver of answer under PLRA).

The Fourth Circuit has recognized that government officials may forfeit a defense under § 1997e(d).  In *Alexander S. ex rel. Bowers v. Boyd*, the court declined to apply the PLRA attorneys' fee cap—despite a question whether it applied to a case brought by a juvenile confined in a juvenile institution—without deciding whether the Act applied "in view of the State' s decision not to pursue any argument under the Act."  89 F.3d 827, at *1 n.2 (4th Cir. 1996) (unpublished).  This amounted to "waiver of application of the PLRA's attorney's fees provision," as the Fourth Circuit later acknowledged in a published decision.  *Alexander S.*, 113 F.3d at 1385.  The Eighth and Ninth Circuits have similarly recognized that PLRA defenses are forfeited if not timely raised.  *See Jimenez v. Franklin*, 680 F.3d 1096, 1099–1100 (9th Cir. 2012) (§ 1997e(d)); *Foulk v. Charrier*, 262 F.3d 687, 697 (8th Cir. 2001) (§ 1997e(a)).

Given courts' uncertainty regarding the PLRA's applicability to pre-incarceration violations, as identified in the Court's order and discussed above, ECF No. 194 at 2, there is no

cause to depart from the Fourth Circuit's ordinary forfeiture principles by reaching out to decide this question.

## CONCLUSION

For the foregoing reasons, Plaintiff Michael Wyatt respectfully submits 42 U.S.C. § 1997e(d) does not apply to the facts of this case, and in any event has been waived. Wyatt therefore renews his request for an award of $850,764 in attorneys' fees and $129,748.38 in costs and expenses, plus post-judgment interest.

Respectfully submitted,

/s/ Gordon D. Todd
Gordon D. Todd
Benjamin Beaton
Morgan Branch
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
T: (202) 736-8000
F: (202) 736-8711
gtodd@sidley.com
*Counsel for Michael E. Wyatt*

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2017, I caused a copy of the foregoing Brief on Applicability of 42 U.S.C. § 1997e to be served via ECF on the following counsel:

Jim H. Guynn, Jr.
Theresa Joan Fontana
Guynn & Waddell, PC
415 S. College Avenue
Salem, VA 24153
T: (540) 387-2320
F: (540) 389-2350
jimg@guynnwaddell.com
Counsel for Robert Worsham

/s/ Gordon D. Todd