# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

MICHAEL E. WYATT,          )
                                   )
        Plaintiff,        )
                                   )
v.                            )      Civil Action No. 7:14-cv-492
                                 )
JOHNNY OWENS, et al.,      )
                                 )
        Defendants.    )

## REPORT AND RECOMMENDATION

In this 42 U.S.C. § 1983 litigation, a jury awarded Plaintiff Michael E. Wyatt ("Wyatt") compensatory and punitive damages totaling $150,000.00 against Robert Worsham for the unconstitutional use of force in apprehending, arresting and restraining Wyatt. Dkt. No. 193. Wyatt now seeks an award of $850,764.00 in attorneys' fees and $129,748.38 in costs. I have considered the record, the legal arguments presented, and the applicable law, and submit this report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) that the district court **GRANT** Wyatt's Request for Attorneys' Fees (Dkt. No. 181), and award Two Hundred Twenty Five Thousand Dollars ($225,000) in attorneys' fees and Seventeen Thousand Six Hundred Eighty and 84/100 Dollars ($17,680.84) in expenses.

## I.      BACKGROUND[1]

Wyatt brought this action *pro se* on September 11, 2014, alleging claims against several Pittsylvania County Sheriff's deputies for using excessive force during Wyatt's arrest on July 3, 2012. The court granted summary judgment and dismissed two of the named defendants on August 20, 2015. Dkt. No. 31. In February 2016, counsel appeared on Wyatt's behalf and added

---

[1] The facts of this case are fully set forth in the District Court's Memorandum Opinion dated August 20, 2015. Dkt. No. 30.

Case 7:14-cv-00492-NKM-RSB   Document 197   Filed 01/23/18   Page 1 of 37   Pageid#: 3659

Thomas Nicholson and Robert Worsham as defendants. Dkt. No. 58. Defendants Nicholson and Worsham filed motions for summary judgment, which the court denied. Dkt. No. 97. Wyatt sought to amend his complaint a second time to add Pittsylvania County Sheriff Michael Taylor as a defendant; however the court denied the motion, finding that Wyatt's claims against Sheriff Taylor did not relate back to filing of the original complaint, and thus were time barred. Dkt. No. 108.

At trial, the jury awarded Wyatt $50,000 in compensatory damages and $100,000 in punitive damages against Worsham only, and returned a verdict in favor of all other defendants. Dkt. No. 172. The court entered judgment against Defendant Worsham in the amounts awarded by the jury. Dkt. No. 175.

On May 19, 2017, Wyatt submitted his application for attorneys' fees and costs under 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d). Dkt. No. 181. I ordered further briefing on whether the Prison Litigation Reform Act ("PLRA") governs this case and, therefore, limits the attorney's fee a prevailing prisoner can recover to 150% of the judgment. See 42 U.S.C. §§ 1997e(d)(1)–(3). This matter has been fully briefed and is ripe for decision.

## II.     APPLICABLE LAW

### A. Prison Litigation Reform Act

The "American Rule" generally requires parties in federal courts to pay the costs associated with hiring an attorney and trying a case absent explicit congressional authorization to the contrary. Wilkins v. Gaddy, 734 F.3d 344, 349 (4th Cir. 2013). The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. §1988, partially abrogated the American Rule by granting courts the authority to award attorneys' fees to a prevailing party[2] in a civil rights action. The

---

[2] To qualify as a "prevailing party," the plaintiff must "obtain at least some relief on the merits of his claim." Farrar v. Hobby, 506 U.S. 103, 111 (1992). It is undisputed that Wyatt is the "prevailing party" in this matter, as a jury

2

purpose of §1988 is to ensure meaningful and effective access to the judicial system for persons with civil rights grievances. Thus, a successful plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983).

However, "what Congress provides, Congress can adjust or take away." Wilkins, 734 F.3d at 349. In 1995, Congress enacted the Prison Litigation Reform Act (PLRA) in an effort to reduce the "ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary." Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 676 (4th Cir. 2005), abrogated on other grounds by Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). The PLRA expressly limits an award of attorney's fees "[i]n any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title…" 42 U.S.C. §§ 1997e(d)(1).[3]

---

awarded him compensatory damages and punitive damages against Defendant Worsham. See McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013) ("For purposes of § 1988, 'a party in whose favor a judgment is rendered, regardless of the amount of damages awarded,' is the prevailing party.") (quoting Grissom v. The Mills Corp., 549 F.3d 313, 318 (4th Cir. 2008)).

[3] Section 1997e(d) sets forth, in relevant part:

(d) Attorney's fees

(1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that—

(A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and

(B)(i) the amount of the fee is proportionally related to the court ordered relief for the violation; or

(ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

(2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount

Specifically, section 1997e(d) caps attorney's fee awards at 150 percent of the prisoner's monetary judgment, § 1997e(d)(2), and limits the hourly rate used to calculate attorney's fees to no greater than 150 percent of the rate established under 18 U.S.C. § 3006A for payment of court-appointed counsel.[4] 42 U.S.C. § 1997e(d)(3). Thus, if applicable, the PLRA fee cap would limit Wyatt's fee recovery to a maximum of 150% of his award or $225,000.00. See Wilkins v. Gaddy, 734 F.3d at 350 (Upholding the constitutionality of the attorneys' fee cap set forth in § 1997e(d)).

Wyatt has been continuously incarcerated since his arrest associated with the events which gave rise to this litigation which makes Wyatt was a "prisoner" as that term is defined by §1997e(h) when he filed this action, and throughout the litigation. Thus, this case appears to fall within the provisions of §1997e(d)(1). However, Wyatt was not a prisoner when this cause of action arose and he did not bring this case challenging his conditions of confinement. A split in authority exists as to whether the phrase "any action" in §1997e(d)(1) applies to **all** civil rights actions brought by a prisoner for which fees are recoverable under § 1988. That is, the case law does not clearly answer whether the PLRA attorney's fee limits apply to causes of action that arose prior to the prisoner's incarceration, or if the phrase "any action brought by a prisoner"

---

of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

(3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel.

(4) Nothing in this subsection shall prohibit a prisoner from entering into an agreement to pay an attorney's fee in an amount greater than the amount authorized under this subsection, if the fee is paid by the individual rather than by the defendant pursuant to section 1988 of this title.

42 U.S.C.A. § 1997e (West Mar. 7, 2013).

[4] The current rate for court appointed counsel pursuant to 18 U.S.C. §3006A is $129 per hour for work performed between January 1, 2016 and May 4, 2017. Guide to Judiciary Policy, Vol. 7A, Ch. 2, §230.16(A)).

relates only to litigation concerning the prisoner's conditions of confinement. Compare Robbins v. Chronister, 435 F.3d 1238 (10th Cir. 2006) (*en banc*) (holding that the PLRA attorney fee limitations apply to all prisoner civil rights claims, including claims arising before incarceration) with Sutton v. City of Yonkers, 13 Civ. 801, 2017 WL 1180918, at * 3 (S.D.N.Y. March 29, 2017) (holding that the PLRA attorney fee limitations apply only to civil rights claims challenging prison conditions). The Fourth Circuit has discussed the PLRA attorney's fee cap, but has not addressed whether the cap applies to prisoner civil rights actions which arise outside of and which are unrelated to prisoner conditions of confinement. I find that the plain language of the PLRA, the Fourth Circuit opinions interpreting §1997e(d), and persuasive opinions from the Tenth and Eleventh Circuits lead to the inescapable conclusion that the PLRA attorney's fee cap applies to all civil rights claims brought by prisoners, including claims that arose before incarceration. Thus, I find that the fee caps contained in the PLRA will limit the fee award to Wyatt.

Courts interpreting statutes are charged with the duty to apply the law that Congress enacted. Maryland State Dept. of Educ. v. U.S. Dept. of Veterans Affairs, 98 F.3d 165, 168 (4th Cir. 1996). "When the terms of a statute are clear and unambiguous, our inquiry ends and we should stick to our duty of enforcing the terms of the statute as Congress has drafted it." Sigmon Coal Co. v. Apfel, 226 F.3d 291, 304–05 (4th Cir. 2000). There exists a "strong presumption that Congress expresses its intent through the language it chooses." Sigmon Coal Co., 226 F.3d at 305 (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 432 n.12 (1987)).

The Fourth Circuit has broadly interpreted the phrase "any action" in §1997e(d)(1) to apply to all actions brought by prisoners in which attorney's fees are authorized under §1988. In Montcalm Publishing Corporation v. Commonwealth of Virginia, 199 F.3d 168 (4th Cir. 1999),

5

an inmate brought a § 1983 action claiming that the prison's ban of a publisher's magazines violated his First Amendment rights. The publisher intervened and ultimately prevailed, obtaining a ruling on appeal that the prison policy violated its due process rights. On remand, the publisher sought to recover its attorney's fees under §1988 as a prevailing party. The district court awarded fees, but subject to the PLRA fee limitations. On appeal, the Fourth Circuit rejected the publisher's argument that "Congress intended the restrictions on the recovery of attorney's fees to be applicable solely to prisoners and their lawyers bringing lawsuits challenging the conditions of the prisoners' imprisonment." Id. at 171. The court found the publisher's assertion "at odds with the plain language of the statute," stating:

> The PLRA expressly imposes limitations on the amount of attorney's fees awarded "[i]n any action brought by a prisoner who is confined to any jail, prison, or other correctional facility." Thus, Congress has mandated that statutory fee limits apply not "solely to prisoners" but to "any action brought by a prisoner." Unquestionably, the case at hand is one "brought by a prisoner." Indeed, two prisoners, Hodges and Flora, initiated this case; Montcalm merely intervened. Thus, application of the PLRA is inescapable.

Id. at 171–72 (internal citations omitted).

In Jackson v. State Bd. of Pardons and Paroles, 331 F.3d 790, 794 (11th Cir. 2003), the plaintiff prisoner successfully brought a § 1983 action challenging the denial of parole. Thereafter, Jackson sought to recover attorney's fees unrestricted by the fee cap under the PLRA because his action challenged the length of his confinement and not prison conditions. The Eleventh Circuit rejected Jackson's contentions and applied the plain meaning of the statutory language and determined that the phrase "any action brought by a prisoner" in §1997e(d)(1) means all lawsuits filed by a prisoner and is not restricted to lawsuits challenging prison conditions. Id. at 795–76.

Wyatt asserts that §1997e, read as a whole, shows Congress's intent to limit the PLRA attorney's fee restrictions to actions involving prison conditions and that the limitations do not apply to civil rights actions which accrue outside of the prison setting and which are unrelated to a plaintiff's status as a prisoner. Wyatt points to § 1997e(a) (exhaustion of administrative remedies), § 1997e(c)(1) (sua review of suits), and § 1997e(f)(1) (hearing in prisoner cases) which set out certain limitations and conditions applicable to actions brought "with respect to prison conditions."[5] In contrast, § 1997e(d) does not contain the same limitations to prison conditions. Rather it applies to "any action . . . brought by a prisoner." Nevertheless, Wyatt asserts that reading §1997e(d) "in isolation" would "do violence to the statutory scheme and would require repetitive and redundant statutory drafting." Dkt. No. 196, p. 5.

Congress included the phrase "with respect to prison conditions" in sub-sections (a), (c) & (f) of §1997e, but not in sub-section (d). Indeed, the appearance of the phrase "with respect to prison conditions" in three sub-sections of the statute reinforces the significance of its omission

---

[5] These sections are set forth as follows:

**(a) Applicability of administrative remedies**
No action shall be brought *with respect to prison conditions* under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

**(c) Dismissal**
**(1)** The court shall on its own motion or on the motion of a party dismiss any action brought *with respect to prison conditions* under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

**(f) Hearings**
**(1)** To the extent practicable, in any action brought *with respect to prison conditions* in Federal court pursuant to section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility, pretrial proceedings in which the prisoner's participation is required or permitted shall be conducted by telephone, video conference, or other telecommunications technology without removing the prisoner from the facility in which the prisoner is confined.

42 U.S.C.A. § 1997e (emphasis added).

in sub-section (d), demonstrating Congress's intent for the attorney's fees restriction to apply more broadly. "[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." BFP v. Resolution Tr. Corp., 511 U.S. 531, 537 (1994) (quoting Chicago v. Envtl. Def. Fund, 511 U.S. 328, 338 (1994)). See also Nat'l Fed'n of Indep. Bus. v. Sebelius, 567 U.S. 519, 544 (2012) (citing Russello v. United States, 464 U.S. 16, 23 (1983)) ("Where Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally."). Thus, Wyatt's assertion that the fee cap is limited to cases involving prison conditions is contradicted by the plain language of §1997e(d) and by the text of §1997e as a whole.

Wyatt also argues that applying §1997(d) to "any action" brought by a prisoner contravenes the purposes of the PLRA and §1988 and invites inefficient and bizarre results. Courts may go beyond the plain language of unambiguous statutes if a literal reading of a statute: (1) produces an outcome that is "demonstrably at odds" with clearly expressed congressional intent to the contrary, United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242 (1989); or (2) results in an outcome that is absurd, i.e., that is "so gross as to shock the general moral or common sense." Maryland State Dep't of Educ., 98 F.3d at 169 (internal citations omitted). In these narrow circumstances, a court may look beyond an unambiguous statute and consult legislative history to divine its meaning. However, if statutory language "is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion." United States v. Murphy, 35 F.3d 143, 145 (4th Cir. 1994).

The arguments upon which Wyatt relies were rejected by the Tenth Circuit Court in Robbins v. Chronister, 435 F.3d 1238 (10th Cir. 2006). Robbins involved a civil rights violation against a police officer who broke Robbins's car window while trying to arrest him. Like Wyatt, Robbins was a prisoner when he filed suit and throughout the litigation. After a bench trial on Robbins's §1983 claim, the court awarded Robbins nominal damages of one dollar. The district court held that the plain meaning of §1997e subjected Robbins to the PLRA fee cap, but the district court declined to apply the fee limitation holding that it would produce an absurd result because Congress could not have intended the statute to apply to meritorious civil rights claims that arose before a prisoner's confinement. See Robbins v. Chronister, No. 97-3489-DJW, 2002 WL 356331, at * 4, 6-9 (D. Kan. Mar. 1, 2002). A three-judge panel of the Tenth Circuit affirmed, but an *en banc* panel reversed, finding that the PLRA limited Robbins' attorney fee claim to 150% of his award, or $1.50. Robbins, 435 F.3d at 1244.

The *en banc* court noted that that the plain language of the statute provides that the fee cap applies to ***any*** action brought by a prisoner. The court further held that the absurdity doctrine is only appropriate when the plain meaning is "one in which the absurdity and injustice of applying the provision to the case, would be so monstrous, that all mankind would, without hesitation, unite in rejecting the application." Id. at 1241 (quoting Sturges v. Crowninshield, 17 U.S. 122, 202–03 (1819)). Elaborating on this high standard, the court recognized that the absurdity doctrine requires not just that the statute reads contrary to what Congress intended, but, further, that this reading be so bizarre the Congress could not have intended it. Id.

The court found nothing absurd as to Congress's intent and any policy concerns, stating,

> We see nothing absurd about reducing that incentive for *all* civil-rights claims filed by prisoners, not just those challenging conditions in prison. The balance of incentives and disincentives for filing suit is quite different for prisoners than for free persons, regardless of the subject matter of the claim, whether it be prison

9

conditions or preincarceration conduct. Free persons must weigh the value of a possible victory in court against the burdens on their time and wallets in pursuing litigation. Prisoners, in contrast, have time in abundance, do not need money for their own necessities, and are entitled to free legal assistance or access to legal materials. And what may be perceived as burdens to free persons, such as taking time for depositions or court appearances, may well be considered an attractive change of scenery for prisoners. Given these circumstances, there is nothing absurd about applying the restriction on attorney-fee awards to prisoner civil-rights claims arising before incarceration as well as to such claims arising during incarceration.

Id. at 1244. The court acknowledged the strong performance of plaintiff's counsel but held that "any temptation we may have to reward [him] for his service is overcome by our duty to respect an Act of Congress." Id.

Conversely, in Sutton v. City of Yonkers, the prisoner plaintiff filed suit alleging a civil rights violation which arose prior to and was unrelated to his incarceration. The district court rejected the Magistrate Judge's report and recommendation that the PLRA applied to any civil rights action filed by a prisoner while incarcerated, including claims that arose before the prisoner was incarcerated. The district court noted that the Second Circuit Court of Appeals previously cautioned against extending the PLRA beyond suits challenging prison conditions, and that Congress was concerned about frivolous litigation by prisoners challenging conditions of their confinement when it enacted §1997e. Sutton, 2017 WL 1180918, at *3. The court recognized the Tenth Circuit decision in Robbins and Eleventh Circuit decision in Jackson, which applied the fee cap to all civil rights litigation brought by prisoners while incarcerated, but relied instead upon two rulings from the Eastern District of Pennsylvania that the cap only applies to actions brought with respect to prison conditions.[6] Id. at *3 (citing Hall v. Galie, No.

---

[6] Notably, the two Eastern District of Pennsylvania decisions to which Sutton refers erroneously cite and rely upon the Tenth Circuit's panel decision in Robbins that was later reversed. In Hall v. Galie, No. 05-975, 2009 WL 722278 (E.D. Pa. Mar. 17, 2009), the court held that the PLRA fee cap only applies to lawsuits brought by prisoners with respect to prison conditions. In its analysis, the court erroneously cited a circuit split on the issue between the Eleventh Circuit decision in Jackson and the Tenth Circuit panel decision in Robbins. The court did not cite or discuss the en banc Robbins decision in 2006. The court criticized the Jackson decision as not considering the

05-975, 2009 WL 722278 (E.D. Pa. Mar. 17, 2009); Hatchett v. Cty. of Philadelphia, No. 09-cv-1708, 2010 WL 4054285 (E.D. Pa. Oct. 15, 2010)). The court also distinguished Robbins and Jackson because Sutton challenged a prior civil rights violation *unrelated* to his present incarceration, noting that Sutton "just happened to be in jail for a subsequent, unrelated violation when he filed the present suit." Id. at *4.

The court's reasoning in Sutton is unpersuasive. Unlike in Sutton, Wyatt's claim arises from his arrest on the charge that led to his incarceration and is not factually distinguishable from Robbins. Further, Fourth Circuit case law does not caution against interpreting the PLRA beyond suits involving prison conditions. Rather, the Fourth Circuit has described the Congressional intent behind the PLRA broadly as an effort to discourage prisoners from filing frivolous lawsuits which strain the judiciary's resources. See McLean v. United States, 566 F.3d 391, 397 (4th Cir. 2009) (quoting 141 Cong. Rec. S14,418 (1995))( "The impetus behind the enactment of the PLRA was a concern about the 'endless flood of frivolous litigation' brought by inmates."); Anderson, 407 F.3d 674 ("The PLRA was designed to discourage the initiation of litigation by a certain class of individuals–prisoners–that is otherwise motivated to bring frivolous complaints as a means of gaining a short sabbatical in the nearest Federal courthouse."); Roller v. Gunn, 107 F.3d 227, 230–31 (4th Cir. 1997) ("Finding that the proliferation of prisoner litigation was due significantly to the lack of economic disincentives to filing meritless cases, Congress passed the Prison Litigation Reform Act.").

The Fourth Circuit specifically addressed the Congressional intent behind the PLRA when it upheld the constitutionality of §1997e(d) in Wilkins v. Gaddy, 734 F.3d 344 (4th Cir.

---

§1997e statute in whole, and cited and relied heavily upon the overturned Robbins panel decision. See also Hatchett v. Cty. of Philadelphia, No. 09-cv-1708, 2010 WL 4054285 (E.D. Pa. Oct. 15, 2010) (Holding that the PLRA did not apply to a prisoner lawsuit alleging excessive force by arresting officers based entirely upon the Court's prior opinion in Hall v. Galie).

2013).  In <u>Wilkins</u>, the plaintiff argued that §1997e(d) is unconstitutional because it makes an irrational distinction between prisoner civil rights litigants and non-prisoner civil rights litigants. The Fourth Circuit disagreed, and discussed the legislative intent behind the PLRA, stating,

> [i]t was not irrational for Congress to believe that inmates have certain litigation advantages and certain incentives to file lawsuits not shared by non-prisoner plaintiffs.  Inmates are provided with the necessities of life at state expense; they receive 'free paper, postage, and legal assistance;' and they may have greater amounts of free time in which to prepare their claims. Furthermore, prisoners might see legal proceedings as a 'means of gaining a short sabbatical in the nearest Federal courthouse,' or as a tool to 'intimidat[e] members of the prison staff.' Congress was entitled to conclude that this mix of advantages and incentives finds no analogue outside prison walls.

<u>Id.</u> at 350 (internal citations omitted).  As the *en banc* court noted in <u>Robbins</u>, the balance of incentives and disincentives for filing a lawsuit is notably different for prisoners and non-prisoners. Non-prisoners have different considerations in terms of time and money than prisoners, who can plausibly be expected to have fewer distractions and more incentive to file a law suit. The restrictions in § 1997e(d)(2) only limit the recovery of attorneys' fees, not outright deny them, and this impediment does not deny prisoners the right to pursue lawsuits for civil rights violations. Thus, applying the plain language of §1997e(d) to this case is not "demonstrably at odds" with Congressional intent and is not "so bizarre that Congress could not have intended it." <u>Demarest v. Manspeaker</u>, 498 U.S. 184, 190–91 (1992).

Wyatt argues that applying the fee cap to this case would "narrow the remedial scope of §1988," which the Fourth Circuit has recognized as essential to ensure effective access to the judicial process for persons with civil rights grievances. Dkt. No. 196, p. 6.  Indeed, the PLRA narrows the remedial scope of §1988.  As the Fourth Circuit stated in <u>Wilkins</u>, "what Congress provides, Congress can adjust or take away." 734 F.3d at 349.  The Fourth Circuit recognized that "the congruence between §1997e(d)(2) and the goal of reducing meritless and insubstantial

prisoner lawsuits may not be perfect…" but "[t]he simple, mathematical formula embodied in §1997e(d)(2) rationally forestalls collateral fee litigation while ensuring that the incentive provided by an attorneys' fee award still attaches to the most injurious civil rights violation." Id. at 351.

Wyatt also asserts that applying the PLRA attorneys' fee cap to cases involving pre-incarceration causes of action would encourage prisoners and their lawyers to delay adjudicating constitutional claims until after release from custody, which "advances none of the PLRA's interests, and runs contrary to the public's interest in the swift disposition of disputes and the resolution of alleged civil rights violations." Dkt. No. 196, p. 12. Wyatt's argument takes issue with a policy decision Congress made when it enacted the PLRA. As the Sixth Circuit stated in Walker v. Bain,

> [w]e are aware that § 1997e(d)(2) will have a strong chilling effect upon counsels' willingness to represent prisoners who have meritorious claims. We are also mindful that the "marginal or trivial" claims that result in a judgment for a prisoner, such as Walker, do in fact arise out of an actual, proven civil rights violation. We admit to being troubled by a federal statute that seeks to reduce the number of meritorious civil rights claims and protect the public fisc at the expense of denying a politically unpopular group their ability to vindicate actual, albeit "technical," civil rights violations. However, we are aware that we are not authorized to act as a "superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." Moreover, our role is not "to judge the wisdom, fairness, or logic of legislative choices."

257 F.3d 660, 667–70 (6th Cir. 2001) (internal citations omitted); see also Shepherd v. Goord, 662 F.3d 603, 609 (2nd Cir. 2011) ("Whatever arguments can be mounted for or against the policy choice reflected in §1997e(d), particularly as applied to pro bono counsel, the proper forum for that debate is Congress, not the courts.").

The plain terms of §1997e(d) reflect that the fee cap applies to any action brought by a prisoner in which attorney's fees are authorized under §1988, including Wyatt's action.

13

Applying the fee cap to Wyatt's claim does not create an absurd result "so gross as to shock the general moral or common sense," nor is it "demonstrably at odds" with clearly expressed congressional intent to limit frivolous litigation brought by inmates. Thus, I will apply §1997e(d)(2) & (3) when calculating Wyatt's recoverable attorney's fees using the lodestar method. See Sigmon Coal Co., 226 F.3d at 305 ("[W]e are more than a little hesitant to abandon the presumption that Congress meant what it said, or did not say, when the words of a statute are plain, as they are here.").[7]

### III.     ANALYSIS

The PLRA imposes maximums on the total fee or hourly rate the court can award. The application of the PLRA, however, does not result in a simple mathematical calculation of awarding 150% of the judgment. Rather, the court must still determine a reasonable fee. Only then is that fee compared to the maximums allowed under the PLRA.

#### A.  Lodestar Calculation

The Fourth Circuit follows a three-step process to determine a reasonable attorneys' fee award. McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013), as amended (Jan. 23, 2014). First, the court determines the lodestar figure, which is calculated by multiplying the reasonable number of hours expended by the reasonable hourly rate. Id. Courts evaluate the reasonableness of the hours expended and rates sought on fee petitions under the lodestar method using the twelve factors identified in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th. Cir. 1974), as adopted by Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n. 28 (4th Cir. 1978). See

---

[7] Wyatt asserts that Worsham forfeited or waived any claim that §1997e(d) limits the attorneys' fee award in this case by failing to raise the argument in his initial brief. However, courts have recognized that the statute's command is mandatory, and found that "the failure to apply the attorney's fee provisions of the PLRA would be considered an abuse of discretion." Sutton v. City of Yonkers, 2017 WL 105022, at *5 (quoting Hightower v. Nassau Cty. Sheriff's Dep't, 343 F. Supp. 2d 191, 193 (E.D.N.Y. 2004)).

14

Robinson v. Equifax Info. Servs., 560 F.3d 235, 243–44 (4th Cir. 2009).[8] Second, the court subtracts fees for hours spent on unsuccessful claims unrelated to successful claims. McAfee, 738 F.3d at 88. Finally, the court awards a percentage of the remaining amount to the plaintiff, depending on the degree of success of plaintiff's claims. Id. A strong presumption exists that a properly calculated lodestar figure is reasonable. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 554 (2010). That presumption may be overcome only in rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee. Id.

### i. Hourly Rates

Wyatt's counsel seeks fees at rates ranging from $122.20 for paralegals to $450.00 for partners.[9] Section §1997e(d)( 3) provides that, "[n]o award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel." The rate for court appointed counsel pursuant to 18 U.S.C. §3006A is $129 per hour for work performed between January 1, 2016 and May 4, 2017. See 7A Admin. Office of U.S. Courts, Guide to Judiciary Policy, §230.16(A). Wyatt's counsel participated in this case from February

---

[8] The Fourth Circuit has construed the Johnson factors as: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. Robinson, 560 F.3d at 243–44.

[9] Wyatt's counsel discounted their standard billing rates of $900 per hour for partners, $450 –$795 per hour for associates, and $245 per hour for paralegals. Dkt. No. 181-1, p. 14.

2016 through May 2017.  Thus, I will approve a rate of $193.50[10] for Wyatt's counsel, and $100.00 for paralegal work.[11]

### ii. Reasonable Hours[12]

Wyatt's counsel seeks reimbursement for over 2,900 hours expended in this case. Worsham asserts that Wyatt's request should be drastically reduced due to duplicative time entries, overstaffing, block billing, and fees for clerical work.  Wyatt asserts that the time entries are appropriate, sufficiently detailed, and were necessary to enforce Wyatt's constitutional rights.

Wyatt's $850,000 fee request far exceeds this court's expectation for a reasonable attorney's fee to bring a prisoner civil rights action in Danville, Virginia. Certainly, Wyatt's counsel undertook this representation with no guarantee of a fee award, invested substantial time in the case to enforce Wyatt's constitutional rights, and achieved a significant result for their client. However, this case did not involve novel facts or law, nor is this type of civil rights claim particularly difficult or specialized.  Having reviewed the time reports in detail, I find that the substantial amount of fees sought is largely a product of overstaffing and duplication of work.

### 1. Duplication of Effort and Lack of Billing Judgment

Worsham argues that Wyatt's attorneys' fee application should be substantially reduced because it contains duplication of effort and lack of billing judgment.  Specifically, Worsham asserts that Wyatt's counsel overstaffed telephone conferences, hearings, depositions and trial,

---

[10] Calculated as 150% of $129.

[11] 18 U.S.C. §3006A does not address billing rates for paralegals. This court has previously found a billing rate of $100.00 per hour to be reasonable for paralegals. See Hudson v. Pittsylvania County, No. 4:11cv43, 2015 WL 3447821, at *3 (W.D. Va. May 28, 2015); Skycable, LLC v. Coley, No. 5:11cv00048, 2014 WL 4407130, at *4 (W.D. Va. Sept. 8, 2014); see also Project Vote/Voting for America v. Long, 887 F. Supp. 2d 704, 713 (E.D. Va. 2012).

[12] The calculation of the lodestar figure requires the court to critically examine the billing practices of the attorneys and paralegals representing Wyatt.  The court must analyze their billing practices in light of what is acceptable in making an award under §1988 and is not an attempt to comment on acceptable billing means or methods in the private sector.

and generally employed multiple attorneys to perform the work of one. Worsham objects to Wyatt's counsel's practice of using multiple attorneys to draft, review and revise documents. Worsham also asserts that Wyatt's counsel seeks compensation for approximately 370 hours for intra-firm conferences, emails or other communications that were double or triple billed by attorneys. Worsham provided a detailed chart of the specific conference calls, depositions, hearings and trial attended by two or more of Wyatt's attorneys, as well as seventeen instances where multiple attorneys allegedly duplicated efforts drafting documents or preparing legal arguments. See Dkt. Nos. 190-5, 190-6, 190-7.

Wyatt's counsel defends its team of six attorneys in this case as the reasonable supervision of junior attorneys by more senior attorneys, and the economical billing practice of delegating tasks to junior associates with lower billing rates. Wyatt's counsel also asserts that intra-office conferences and communications are properly billable for strategy and effective case management. I agree with Wyatt that it is often cost-effective to pair an associate and a partner on a case, and that time spent in intra-office attorney conferences is generally compensable. Here, however, the fee petition reflects that this case was overstaffed with five associates and one partner, and that tasks were often duplicated by the attorneys, rather than delegated.

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Hensley v. Eckerhart, 461 U.S. at 434. However, "there is nothing inherently unreasonable about a client having multiple attorneys." McAfee v. Boczar, 906 F. Supp. 2d 484, 501 (E.D. Va. 2012) vacated and remanded on different grounds, 738 F.3d 81 (4th Cir. 2013), as amended (Jan. 23, 2014) (quoting Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988)

(internal quotation marks omitted). When reviewing the hours expended, the court must focus on the reasonableness of the division of responsibility between counsel. Reduction of hours is warranted only if counsel unreasonably duplicate each other's work. See Project Vote, 887 F. Supp. 2d at 714. In evaluating whether Wyatt's counsel's work was duplicative and excessive, I consider the Johnson factors analyzing the difficulty of the questions raised in the litigation, the skill required to perform the services rendered and the time limitations imposed by the circumstances of the case. See Crump v. U.S. Dept. of Navy, No. 2:13cv707, 2017 WL 1158244, at *11 (E.D. Va. March 27, 2017).

This case involved §1983 claims for unreasonable use of force in violation of the Fourth Amendment. There were no particularly cumbersome, novel or difficult issues of fact or law, nor were there any notable time limitations. Wyatt proceeded *pro se* in this matter until February 2016. Wyatt's counsel was involved for 14 months, during which they filed two amended complaints, engaged in document discovery and depositions, opposed a motion to quash and motion for summary judgment, attended mediation, filed a motion for discovery and three motions in limine, and participated in a three day jury trial which involved ten witnesses.

Wyatt's counsel seeks reimbursement for over 2,900 hours in this case, billed by partner Gordon Todd (180.5), five associates, Benjamin Beaton (693.70), Cara Lopez (440.1), Daniel Hay (431.1), Morgan Branch (280.1), Robin Wright (115.1), and paralegal Erin Lyons (766.1). The number of hours billed by Wyatt's counsel for the 14 months that they participated in this case is staggering, and suggests either excessive or duplicative time entries which are not compensable as part of an award under § 1988. For example, one attorney would have to bill 10 hours a day, every work day, for 14 months on this case to amass 2,900 hours. Indeed, the time records reflect that Wyatt's counsel went beyond pairing junior and senior lawyers on projects

18

for economical purposes. Rather, Wyatt's counsel seeks reimbursement for three attorneys to prepare for and attend court telephone conferences, hearings, telephone calls with expert witnesses, and mediation. Wyatt's counsel seeks reimbursement for two associates to attend six depositions. Perhaps most remarkable, Wyatt's counsel seeks reimbursement for five attorneys and one paralegal to attend the three day trial.[13]

Likewise, the time records reflect that Wyatt's counsel did not generally divide the work to be performed in such a manner as to avoid unreasonable duplication. The records reflect multiple instances where three or more attorneys drafted, reviewed and revised the same document, leading to excessive time entries. For example, Wyatt's counsel billed: (1) 33 hours for three attorneys to draft, revise, and review a set of discovery requests; (2) 16.7 hours for four attorneys to draft, review and revise a seven page mediation statement; (3) 34.6 hours for four attorneys to research and draft an eight page motion to take a deposition; and (4) over 100 hours for four attorneys to research, draft and revise briefs relating to four motions in limine. Dkt. No. 190-6. Additionally, the time records reflect over 300 hours billed for internal discussions and conferences between the six attorneys on this case. Id.

Having reviewed the division of labor between Wyatt's attorneys, and considering the relative complexity of the case, I find that it was unreasonable to have two or three attorneys involved in almost all aspects of the case, from preparing for hearings to attending teleconferences, depositions and trial. "Generalized billing by multiple attorneys on a large case often produces unacceptable duplication." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 180 (4th Cir. 1994). It is not reasonable or necessary for three attorneys to prepare and attend court teleconferences and hearings, or phone calls with experts in this case. See Project Vote,

---

[13] Wyatt's counsel wrote off the hours for two of the associates to observe trial, but included billing entries for those associates during trial for "discrete and necessary legal projects performed in support of the trial team." Dkt. No. 193, p. 16.

887 F. Supp. 2d at 714 (Finding that billing for attendance at hearings and conferences by three attorneys is duplicative and reducing the hours accordingly). It is likewise unreasonable for more than one attorney to attend depositions, especially when both attorneys are associates. See Spell v. McDaniel, 852 F.2d 762 (4th Cir.1988) ("Moreover, we have also been sensitive to the need to avoid use of multiple counsel for tasks where such use is not justified by the contributions of each attorney.").

Wyatt's counsel represents that they wrote off hundreds of hours of legal services in their fee petition to account for time that might be viewed as unnecessary, duplicative or inefficient. Dkt. No. 181-1, pp. 6 & 10. I consider that fact in making adjustments to the hours claimed, but I still find multiple entries for which compensation is requested that suggest duplication of efforts. In these situations, courts will often apply an across the board percentage reduction to account for duplication and overstaffing. Trimper v. City of Norfolk, Va., 58 F.3d 68, 76–77 (4th Cir. 1995) ("Properly reducing allowable hours because of overstaffing of attorneys…falls soundly within the district court's proper discretion in determining an attorney's fee award."). Here, I find that an overall twenty-five percent reduction of the billable hours is warranted. See Doe v. Kidd, 656 Fed. Appx. 643, 656 (4th Cir. 2016) (affirming twenty-five percent reduction in attorney billable hours for excessiveness); Crump, 2017 WL 1158244, at *14 (reducing hours spent on fee petition by twenty-five percent to reflect the duplication of efforts among attorneys and paralegals).

### 2. Block Billing

Worsham also asserts that Wyatt's counsel engaged in "block billing" or lumping multiple tasks into the same billing entry, and thus a reduction of the total fee award is warranted. Courts in this circuit have routinely held that "block billing" does not provide the

court with a sufficient breakdown to support an attorneys' fee request. "Inadequate documentation includes the practice of grouping, or 'lumping,' several tasks together under a single entry, without specifying the amount of time spent on each particular task." Guidry v. Clare, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006); see also McAfee, 906 F. Supp. 2d at 498 ("The practice of 'block billing' has been generally disfavored in federal courts across the country and has often led to a reduction in attorney's fees."). As the court explained in Project Vote, "[w]hile perhaps 'block billing' is not prohibited, it simply does not provide the court with the sufficient breakdown to meet [the applicant's] burden to support its fee request in specific instances." 887 F. Supp 2d at 716. "The court's role is not to labor to dissect every individual entry to hypothesize if the different tasks in the same entry could reasonably result in the requested time." Id. at 717.

Accordingly, courts have found that "[l]umping and other types of inadequate documentation are thus a proper basis for reducing a fee award because they prevent an accurate determination of the reasonableness of the time expended in a case." Guidry, at 294. Courts reduce the fee award in such circumstances by either identifying specific hours that are not sufficiently documented or by reducing the overall fee award by a fixed percentage based on the trial court's familiarity with the case, its complexity, and the counsel involved. See McAfee, 906 F.Supp.2d at 497–500; Project Vote, 887 F. Supp. 2d at 716; Guidry, 442 F. Supp. 2d at 294. In Project Vote, the court noted that counsel's time logs reported the entries with "no breakdown of how the time was spent among often as many as four or five distinct tasks," and thus, "[i]n light of the inexact documentation and the resulting inability of the court to properly assess the reasonableness of the time requested," the court applied a fixed percentage reduction of ten percent to the fee award. Id. at 716.

Examining the time sheets provided by Wyatt's counsel, the most significant block billing entries are from paralegal Erin Lyons, who routinely lumped tasks into one billing entry of up to 8 or more hours.  See Dkt. No. 190-3.  Attorneys Gordon Todd and Morgan Branch also regularly combined several unrelated tasks into one billing entry.  For example, on July 19, 2016, Gordon Todd billed 8 hours of time for "expert deposition; review research memo from A. Smith; draft template for defendant depositions." Dkt. No. 190-3, p. 4.  Likewise, on March 21, 2016, Morgan Branch billed 5.7 hours described as, "call with judge and opposing counsel re: scheduling order; read and review materials from witness; update players list; update witness interview notes; draft notice of appearance; create discovery templates and start drafting discovery requests; review materials for discovery."  Dkt. No. 190-3, p. 5.  Such entries for large blocks of time containing multiple, unrelated tasks are the essence of block billing.  The court cannot discern from these entries how much time was spent on a particular task and, therefore, whether the time spent was reasonable.  As the decisions in Guidry, Project Vote, and McAfee make clear, the court's ability to determine the reasonableness of hours expended is critical to an award of attorneys' fees, and block billing has consistently warranted a reduction of the total award in the Fourth Circuit. See McAfee, 906 F. Supp. 2d at 500 (reducing the hours claimed by ten percent due to block billing); Project Vote, 887 F. Supp. 2d at 717 (reducing total fee request by ten percent due to block billing); Denton v. PennyMac Loan Servs., LLC, No. 4:16CV32, 2017 WL 2113138, at *13 (E.D. Va. May 15, 2017) (reducing the hours sought by ten percent due to block billing entries); SunTrust Mortgage, Inc. v. AIG United Guar. Corp., 933 F. Supp. 2d 762, 778 (E.D. Va. 2013) (reducing the hours claimed by twenty percent due to block billing, unintelligible and inconsistent time entries); Wolfe v. Green, CIV. A. 2:08-01023, 2010 WL

3809857, at *8 (S.D.W. Va. Sept. 24, 2010) (reducing total fee award by ten percent to account for counsel's practice from time to time of block billing).

I find this approach appropriate in this case, and recommend a ten percent reduction of the hours sought by paralegal Erin Lyons to account for her routine block billing. The block billing by the attorneys in this case is less significant, and is accounted for by the twenty-five percent reduction of the attorneys' hours for duplication.

### 3. Clerical Tasks

Worsham also asserts that paralegal Erin Lyons billed extensively for non-compensable clerical work, such as scheduling meetings and making travel arrangements. Worsham requests that the court exclude such clerical work from the fee award. "[I]n this circuit…purely clerical tasks are ordinarily part of a law office's overhead, (which is covered in the hourly rate), [and] they should not be compensated for at all." Brown v. Mountainview Cutters, LLC, 222 F. Supp. 3d 504, 514 (W.D. Va. 2016) (quoting Two Men & A Truck/Int'l, Inc. v. A Mover, Inc., 128 F.Supp.3d 919, 929 (E.D. Va. 2015)); see also Jenkins, 491 U.S. at 288 n. 10, 109 S. Ct. 2463 (noting that "purely clerical or secretarial tasks should not be billed at a paralegal rate"). Examples of clerical tasks include filing documents with the court, issuing summonses, scanning and mailing documents, reviewing files for information, printing pleadings, organizing documents, creating notebooks or files, assembling binders, emailing documents, and making logistical telephone calls. Two Men & A Truck/Int'l, Inc., 128 F.Supp.3d at 929–30 (citing cases).

Here, the billing records submitted by Wyatt's counsel include a number of entries for clerical tasks performed by paralegal Erin Lyons. Such tasks include filing motions with the court, making travel arrangements, creating notebooks and assembling binders, among others.

23

These types of clerical tasks, billed at the paralegal's hourly rate, justify a further ten percent reduction in the paralegal's billable hours. See Brown v. Mountainview Cutters, LLC, 222 F. Supp. 3d at 514–15 (reducing the number of hours billed by the paralegal by 20 percent to account for clerical tasks performed by the paralegal).

### iii. Lodestar Calculation

The lodestar calculation yields the following amount of attorneys' fees and expenses in this matter:

| Name | Hours | Rate | Total: |
|------|-------|------|--------|
| Attorneys | 2,441- 610.25 (25%)=1,830.75 | $193.50 | $354,250.12 |
| Paralegal | 429.6-85.92 (20%) =343.68 | $100.00 | $34,368.00 |
| **Total:** | | | **$ 388,618.12** |

### iv. Reduction of the Lodestar Figure to Account for Unsuccessful Claims

After calculating the lodestar fee, the court must determine whether the fee award should be reduced to reflect the time counsel spent on unsuccessful claims that are unrelated to the successful claims. McAfee, 738 F.3d at 88. Here, Wyatt's claims involve a "common core of facts." Hensley, 461 U.S. at 435. Worsham objects to the recovery of any fees for Wyatt's motion to add Sheriff Michael Taylor as a defendant, which was denied by the court. Wyatt's counsel has already eliminated all fees related to the motion to add Sheriff Taylor from their fee petition, thus no further reduction is warranted on this basis. See Dkt. No. 193, p. 4.

### v. Degree of Success

The final step in determining a reasonable fee award is calculating a percentage of the lodestar figure that takes into account the degree of success of plaintiff's claims. There is a "strong" presumption that the lodestar figure represents a reasonable fee. Perdue, 559 U.S. at

24

552.  However, when a plaintiff achieves only partial or limited success, the lodestar figure may be excessive notwithstanding the fact that all claims were "interrelated, nonfrivolous, and raised in good faith." Hensley, 461 U.S. at 436. In Perdue, the Supreme Court made clear that the strong presumption for the reasonableness of a lodestar fee figure can only rarely be overcome in "extraordinary cases" which will be presented in the "rarest of circumstances." Perdue at 560 (addressing enhancement of lodestar fees).  Further, an attorney's fee award is not required to be directly proportional to the amount of damages that the client recovered in the legal action. Denton, 2017 WL 2113138, at *18 (quoting Croy v. E. Hall & Assocs., P.L.L.C., No. 5:06cv107, 2007 WL 676698, at *3 (W.D. Va. Mar. 2, 2007)).

Worsham asserts that Wyatt achieved minimal success relative to his initial claims and damages sought, which warrants a substantial fee reduction. Worsham notes that Wyatt initially sued five defendants, and only prevailed against one at trial.  Worsham also argues that Wyatt was largely unsuccessful because he requested $100,000 in compensatory damages and $500,000 in punitive damages from the jury, and was awarded substantially less– $50,000 compensatory damages and $100,000 punitive damages.  Wyatt disagrees, characterizing his result at trial as "excellent" in both substance and size.  Wyatt notes that he should not be penalized for settling with two of the named defendants pre-trial, and that Worsham was the most culpable defendant and the only defendant against whom he sought punitive damages.

Extraordinary circumstances do not exist in this case to warrant an upward or downward departure from the lodestar calculation.  With regard to a downward adjustment, a court should reduce an award if the relief is limited in comparison to the scope of the litigation as a whole, with a court asking whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. Hensley, 461 U.S. at 434, 438–

40, 103 S. Ct. 1933; <u>McAfee</u>, 738 F.3d at 92. Here, Wyatt prevailed in this matter and the jury awarded significant compensatory and punitive damages. Thus, I do not find any reduction of fees warranted based upon Wyatt's degree of success; further, any appropriate reduction is accounted for by the limits set forth in the PLRA.

### B. PLRA Reduction

The PLRA limits Wyatt's award of attorney's fees to 150 percent of the judgment, or $225,000. 42 U.S.C. §1997e(d)(2). This is less than the lodestar calculation, thus, the PLRA limits apply, and Wyatt is entitled to $225,000 in attorney's fees.

The PLRA also provides that a court must order that a portion of the attorney fees, not exceeding 25% of the judgment, be paid by the plaintiff's judgment. §1997e(d)(2). There is a disagreement among circuit courts, which is currently pending before the Supreme Court, as to whether courts have discretion to determine the amount of the plaintiff's damage award that is paid toward the attorney fee. <u>Compare</u> <u>Boesing v. Spiess</u>, 540 F.3d 886, 892 (8th Cir. 2008) ("plain language of 42 U.S.C. § 1997e(d)(2) does not require the district court to automatically apply 25 percent of the judgment to pay attorney's fees") <u>and</u> <u>Parker v. Conway</u>, 581 F.3d 198, 205 (3d Cir. 2009) (agreeing with <u>Boesing</u>) <u>with</u> <u>Murphy v. Smith</u>, 844 F.3d 653, 660 (7th Cir. 2016) <u>cert. granted</u>, 138 S. Ct. 42 (Mem. 2017) (§1997e(d)(2) is not discretionary and requires that 25% of the attorney fee award come from the plaintiff's damages). Courts within the Fourth Circuit have followed the holdings of <u>Boesing</u> and <u>Parker</u> that the court may exercise discretion in determining the amount of the judgment that gets directed toward attorney fees.[14] <u>See</u> <u>Wilkins v. Gaddy</u>, No. 3:08cv138, 2012 WL 5872937, at * 6 (W.D.N.C. Nov. 20, 2012); <u>Barnard v. Piedmont Reg'l Jail Auth.</u> No. 3:07cv566, 2009 WL 3416228, at *2 (E.D. Va. Oct. 21, 2009);

---

[14] In <u>Wilkins v. Gaddy</u>, the Fourth Circuit described §1997e(d)(2) as "requir[ing] that ***some*** of the plaintiff's judgment apply toward his attorneys' fee award…" 734 F.3d at 347(emphasis added).

Sutton v. Smith, No. AW-98-2111, 2001 WL 743201, at *2 (D. Md. June 26, 2001).  Further, when the conduct of the officer has been egregious, courts have directed that the plaintiff pay only a nominal portion of the judgment toward attorney fees, leaving the remainder to the defendant.  See Blake v. Maynard, No. 09-cv-2367-AW, 2013 WL 3659421, *2 (D. Md. July 11, 2013); Sutton, 2001 WL 743201, at *2.  I find that Worsham's conduct in this case, as reflected by the jury's award of $100,000 in punitive damages, warrants that Wyatt pay only a nominal amount of  his attorney's fees from the judgment award, and thus recommend that Wyatt pay $1.00 of the fees, and that Defendant Worsham pay the remainder.[15]

## C.  Costs and Expenses[16]

A prevailing plaintiff in a civil rights action is entitled, under § 1988, to recover "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." Spell, 852 F.2d at 771 (quoting Northcross v. Bd. of Educ. of Memphis City Schs., 611 F.2d 624, 639 (6th Cir. 1979)).  Wyatt seeks $129,748.38 in costs and expenses, consisting of: (1) Consultants- $20,127.63; (2) Courier/Delivery Services- $1,040.37; (3) Court Costs -$27,991.65; (4) Discovery/Document Processing-$5,011.38; (5) Legal Research-$32,021.24; (6) Litigation Support and Services-$5,385.28; (7) Meals- $1,935.81; (8) Printing/Duplication- $16,903.43; (9) Telephone Tolls-$322.81; (10) Travel-$17,824.20; (11) Expert fees and travel expenses-$2,047.57.  As with Wyatt's request for fees, Wyatt's requested costs and expenses are substantially higher than this

---

[15] I make the allocation of the payment of fees between Worsham and Wyatt under 42 U.S.C. § 1997(e) with a full appreciation that this question currently lies before the United States Supreme Court. See Murphy v. Smith, 138 S. Ct. 42 (Mem. 2017). The district court can address any objections raised to this report and recommendation and stay the entry of a final division of the payment until after the Supreme Court rules if it so chooses.

[16] Wyatt's request to recover costs and expenses is not governed by §1997e(d), but is subject to a general review for reasonableness. Spell, 852 F.2d at 771.

court would expect or consider reasonable for this type of case.  I recommend awarding only a portion of the expenses requested.

### i.  Inadequate Documentation

Wyatt is entitled to recover those reasonable costs and expenses associated with this case that he can establish with a reasonable degree of specificity. <u>Design and Prod. Inc. v. Am. Exhibitions, Inc.</u>, No. 1:10-cv-899, 2011 WL 6002598, at *3 (E.D. Va. Nov. 30, 2011) (citing <u>W. Square, L.L.C. v. Communication Tech., Inc.</u>, 274 Va. 425, 436, 649 S.E.2d 698, 703 (Va. 2007)). The law is clear that no litigation costs should be awarded in the absence of adequate documentation. <u>Trimper</u>, 58 F.3d at 77 (affirming a district court's holding that "an unverified 'Chart of Expenses,' with no receipts or bills attached" was insufficient documentation to award costs); <u>see</u> <u>also</u> <u>Denton</u>, 2017 WL 2113138, at *19 (disallowing expenses because plaintiff did not provide invoices or receipts); <u>Fernandes v. Montgomery Cty., MD</u>, No. CIV. SAG10752, 2013 WL 6330705, at *7 (D. Md. 2013) (merely listing litigation expenses in billing records, "[w]ith no supporting documentation, such as vouchers, or receipts," is insufficient documentation to allow a court to verify that the amounts are accurate and reasonable).

Wyatt submitted a "Chart of Expenses" to support his request for expenses, with an affidavit from lead counsel Gordon Todd that the expenses listed on the chart were necessarily incurred in the course of the litigation and are the type of out-of-pocket expenses normally billed to fee-paying clients. Dkt. No. 187-1, p. 2.  Wyatt's counsel did not provide monthly invoices reflecting when the expenses were incurred, receipts, or any other documentation to support a majority of the expenses sought.  Thus, multiple categories of expenses sought by Wyatt lack adequate documentation for the court to determine that they are reasonable.[17]

---

[17] Wyatt's failure to provide sufficient documentation cannot be remedied by submitting additional evidence to the district court, as attempts to raise new evidence in response to a report and recommendation are disfavored. <u>See</u>

28

### 1. Discovery/Document Processing

Wyatt seeks $5,011.38 for Discovery/Document Processing, described as: ESI-Processing ($1,225), ESI-Pre-Processing Data Triage ($700), ESI-Electronic Search Service ($277.94), ESI-Scanning, Printing and OCR ($1,346.66), ESI-Data Storage ($1,388), Medical Records ($73.78). Dkt. No. 187-1, p. 7.  Wyatt's counsel provided no documentation to reflect the amount and type of discovery that required thousands of dollars of processing, scanning and storage, or any other supporting information upon which the court can determine that these expenses are reasonable and necessary.

### 2. Litigation Support and Services

Wyatt's counsel also provided no explanation or detail for the $5,385.28 sought for "Litigation Support and Services," which is described as "trial support and consulting" ($3,569.50), and "professional services consulting" ($1,797.50).  It is unclear who provided the trial and professional consulting and for what purpose it was necessary.  These litigation support and services expenses are in addition to a separate category seeking over twenty thousand dollars for "consultants."

### 3. Telephone Tolls

Wyatt seeks expenses of $322.81 for Telephone Tolls, but did not provide monthly invoices with the number of telephone calls that required "tolls."

### 4. Legal  Research

Wyatt seeks expenses of $32,021.24 for legal research, described as: Lexis Research ($1,106.20), PACER Search Services $540.00, and Westlaw Research Services ($30,375.04).

---

_Virgin Enterp. Ltd. v. Virgin Cuts., Inc.,_149 F. Supp.2d 220, 223 (E.D. Va. 2000).  "[A] party may not 'hold back' in the proceeding before the magistrate, hoping to submit additional affidavits or exhibits to the district judge in objection to the magistrate's determination." _Callas v. Trane CAC, Inc.,_ 776 F. Supp. 1117, 1119 (W.D. Va. 1990), aff'd, 940 F.2d 651 (4th Cir. 1991).

Attorney Gordon Todd's declaration represents that the Sidley Austin firm separately bills its clients for the expenses associated with online research services. However, Wyatt's counsel did not provide its monthly invoices, and thus, the court has no information as to the number or types of searches necessary, by whom they were performed and to what purpose.

Overall, the above categories are not self-explanatory and the information provided is insufficient for the court to verify that the amounts sought are accurate and reasonable. Accordingly, I will subtract these amounts from the expenses awarded. I address the remaining categories of expenses below.

### ii. Consultants

Wyatt seeks recovery of $20,127.63 for "consultants," comprised of video and audio enhancement ($2,693.67), trial consultant ($16,101.96), and trial technology and printing services ($1,332.00). Dkt. No. 187-1, p. 6. The trial consultant category includes expenses for printing, encoding and syncing deposition videos, equipment rentals, car rental, airfare and hotel. Id. Worsham objects to the consultant expenses as unreasonable, unnecessary and vague. Dkt. No. 190, p. 12. Worsham notes that Wyatt's legal team was staffed by six attorneys and a paralegal with ample resources provided by the Sidley Austin law firm, and thus had no need for a trial "consultant" that charged fees and expenses of over sixteen thousand dollars. Id. Wyatt asserts that these consultants were necessary and consisted of an audio/video engineer to enhance the dash camera and cell phone videos, a technician to set up printers and other technology at trial, and a courtroom technician to display plaintiff's video, photo and documentary exhibits at trial. Dkt. No 193, p. 20.

In support of these requests, Wyatt provided the consulting and retainer agreement with Opveon Litigation Services, which offers in-courtroom "hot seat" services, and billed $16,101.96

for its services in this case. Dkt. No. 193-3.  Opveon's invoices demonstrate that the Opveon consultants spent hours reviewing deposition transcripts and videos, dash cam videos, Wyatt's complaint, photographs, and emails prior to trial; flew from Tulsa, Oklahoma to Virginia for the trial; billed 16.4 hours the day before trial to "[s]etup courtroom and troubleshoot court electronic presentation system. Setup war room. Prep for trial;" billed 42 hours to attend the entire trial; and billed an additional 4 hours to "tear down equipment in war room and courtroom, pack and ship."  Dkt. No. 193-3, p. 6–9.

These expenses are unreasonable and unnecessary for a three day civil rights jury trial in Danville, Virginia.  This case was more than fully staffed by Wyatt's attorneys, and Opveon consultants performed services that are generally performed by counsel and went well beyond audio/visual or technology assistance.  Further, Wyatt seeks to recover additional expenses for video/audio enhancement by Douglas S. Lacey ($2,693.67) and trial technology and printing services by Rush Computer Rentals, Inc. ($1,332.00).  Attorneys routinely manage the audio, visual and other electronic features of the Federal Courthouse in Danville without difficulty, and court staff is available to assist free of charge, if needed.  It is not evident why Wyatt's counsel needed to hire consultants at a rate of $150.00 an hour to review the case information, set up the courtroom and a "war room," and be present throughout the trial.  I find these expenses wholly unnecessary and unreasonable and will deduct the $20,127.63 sought for "consultants" from the award of expenses.

31

### iii. Court Costs/Transcription Fees

Wyatt seeks $27,366.65 for court reporter and transcript fees for twelve depositions, copies of criminal trial transcripts, and transcripts of the pretrial conference and trial. Dkt. No. 187-1, p. 6. Worsham asserts that these costs are unreasonable because Wyatt's counsel chose to videotape every deposition, which was unnecessary for this case. Dkt. No. 190, p. 12. Wyatt's counsel asserts that videotaping depositions is their standard practice, in part to preserve the testimony of witnesses who become unavailable.

The costs of a deposition, including transcript fees, should be awarded "when the taking of a deposition is reasonably necessary at the time of its taking." LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n, 830 F.2d 522, 528 (4th Cir. 1987). While courts have allowed fees for videotaping depositions, see Taylor v. Republic Servs., Inc., 2014 WL 325169, at *13 (E.D. Va. Jan. 29, 2014), this court has previously denied videographer fees as unnecessary for use in the case where the only purpose was to assure alternative methods for presenting materials at trial. See McAirlaids, Inc. v. Kimberly-Clark Corp., No. 7:12CV578, 2014 WL 495748, at *11 (W.D. Va. Feb. 6, 2014). "The concept of necessity for use in the case connotes something more than convenience or duplication to ensure alternative methods for presenting materials at trial." Cherry v. Champion Intern. Corp., 186 F.3d 442, 449 (4th Cir.1999). In Cherry, the court recognized that "there surely are circumstances when both a videotape and a transcript of a deposition may be necessary," but ultimately held that a defendant's assertion that a video recording might be needed for effective impeachment at trial was insufficient. 186 F.3d at 449. Likewise, here, Wyatt has not met his burden to prove that the videotapes of depositions were necessary for use in this case. Wyatt's professed reasons for obtaining a video recording of all twelve depositions taken in the case consists of nothing more than convenience for counsel, or

duplication to assure alternative methods for presenting materials at trial. See Nobel Biocare USA, LLC v. Technique E'usinage Sinlab, Inc., No. 1:12cv730, 2013 WL 819911, at *3 (E.D. Va. Mar. 4, 2013) (Uncertainty as to whether witnesses would be available for trial does not adequately demonstrate why deposition transcripts would not have been sufficient).

The court reporter invoices provided by Wyatt's counsel reflect only a total cost per deposition, and do not distinguish between the cost of the video recordings and the cost of written transcripts. Thus, I cannot determine which portions of the court reporter fees represent written transcripts, which are recoverable. The only costs that are adequately documented such that the court can determine reasonableness are the copies of criminal trial transcripts ($539.00) and transcripts from the pretrial conference ($363.00) and trial ($2,975.00). Thus, I will award court costs/transcript fees of $3,877.00.

### iv.  Printing/Duplication

Wyatt seeks $16,903.43 for printing/duplication costs, with $13,685.24 for printing, binding, black and white copies and color copies, and $3,218.19 for laser printing of deposition transcripts and trial exhibits. Dkt. No. 187-1, p. 11. It strikes the court that almost seventeen thousand dollars is an unusually large amount of printing and copy charges. I cannot determine the reasonableness of the printing and copying charges because Wyatt's counsel did not provide the firm's monthly invoices with the price per copy and/or number of copies made. Rather, Wyatt's counsel simply provided the dollar amounts for lump categories such as "Duplication Services– e.g., printing and binding" of $13,513.85. As noted above, merely listing litigation expenses in a chart is insufficient documentation for the court to determine reasonableness. See e.g., Adkins v. Crown Auto, Inc., 4:04 CV 00042, 2005 WL 2563028, at *5 (W.D. Va. Oct. 11, 2005) (Itemized list of copies that included date, the documents copied, the number of copies

33

made per day, and the charge per copy is sufficient documentation to support recovery of copying charges).

This court has previously ruled that copy charges of ten cents per page are reasonable. See Elderberry of Weber City, LLC v. Living Centers-Southeast, Inc., No. 6:12cv52, 2014 WL 3900389, at * 6 (W.D. Va. Aug. 22, 2014); McAirlaids, Inc., 2014 WL 495748, at *12; Kelley v. Little Charlie's Auto Sales, No. 4:04cv83, 2006 WL 2456355, at *4 (W.D. Va. 2006); Adkins, 2005 WL 2563028, at *5-6. Wyatt's counsel did not identify whether their printing and copying costs were more than ten cents per page, or provide a basis upon which this court can find that almost seventeen thousand dollars in printing and duplication costs is reasonable and necessary in this case. Given the court's experience, and applying a copying charge of ten cents per page, I find a total printing and copying charge of $3,500.00, which would allow for printing and copying 35,000 pages, to be reasonable. I will reduce Wyatt's expenses for copies to $3,500.00.

### v. Meals and Travel

Wyatt's attorneys seek recovery of $1,935.81 for meals incurred while traveling for depositions, hearings and trial in this case. Worsham argues that the meal expenses should be reduced because no more than one attorney was necessary to represent Wyatt, and the meal charges were expensive and unreasonable, charging more than $25.00 per person on multiple occasions.

Wyatt's counsel also seeks $17,824.20 in travel costs, including airfare ($6,586.55), ground transportation ($733.59), mileage ($359.52), car rentals ($1,228.94), and lodging ($8,915.60). Worsham asserts that these costs are unreasonably high due to the overstaffing by Wyatt's counsel, and further, that air travel was unnecessary and unreasonably expensive in

when Wyatt's counsel was traveling from Washington, D.C. to Raleigh, North Carolina and Roanoke, Virginia.

Meal and travel expenses are generally the type of expenses billed to and paid by clients in this district. See Daly v. Hill, 790 F.2d 1071, 1084 n. 18 (4th Cir. 1986); Quesenberry v. Volvo Group N. Am. Inc., No. 1:09cv00022, 2010 WL 3521998, at *2 (W.D. Va. Aug. 17, 2010). However, only costs related to necessary travel are compensable. I found that it was unnecessary for more than one associate to attend six of the depositions in this case, and more than two attorneys to attend court hearings and trial. Thus, I will allow meal and travel expenses for one attorney to attend depositions and two attorneys to attend court hearings and trial. Meal expenses will be limited to no more than $20 a person, per meal. I agree with Worsham that air travel between Washington, D.C. and Roanoke, Virginia, Danville, Virginia, or Raleigh, North Carolina is unnecessary and should be deducted, but I will allow the expenses for air travel to Wisconsin. Wyatt's counsel provided no evidence as to the rate of mileage used, thus I will disallow the mileage of $359.52, as I cannot determine whether it is reasonable. I will allow the lodging costs for two attorneys throughout the trial ($2,111.39), and disallow the lodging costs for additional attorneys and the "Trial Work Room" ($3,350.18). Accordingly, I will award meal expenses of $905.96, air travel expenses of $832.00, ground transportation expenses of $615.20, car rental expenses of $755.00, and lodging expenses of $4,523.38.[18]

### vi. Expert Fees for Deposition, Trial and Travel

The travel costs of Wyatt's experts are properly taxable under 28 U.S.C. § 1920, and thus, a presumption arises that Wyatt is entitled to recover this cost. Wyatt seeks the amounts proscribed by Federal statute for witness fees of $40 per day, actual travel costs and a

---

[18] Calculated based upon Sidley Austin's "Expenses Detail" (Dkt. No. 187-1), allowing meal and transportation expenses for one attorney to attend each deposition and two attorneys to attend court hearings and trial, and limiting meal expenses to $20 or less per person.

35

subsistence allowance at the per diem rate established by the General Services Administration, for total expert fees of $2,047.57. See 28 U.S.C. §§ 1821, 1920; Dkt. No. 181-1, p. 21.   These costs are necessary and reasonable and will be awarded.

### vii.   Courier/Delivery Services, Process Servers

I find the expenses sought for Federal Express Delivery ($867.50), messenger service ($84.03), postage ($88.84), and process servers ($625.00) to be self-explanatory and reasonable, and thus, award those expenses.

The costs awarded are calculated as follows:

| Cost | Wyatt's Request | Amount Awarded |
|---|---|---|
| Consultants | $20,127.63 | $      0.00 |
| Courier/Delivery Services | $ 1,040.37 | $ 1,040.37 |
| Court Costs/Transcript Fees | $27,366.65 | $ 3,877.00 |
| Process Servers | $ 625.00 | $   625.00 |
| Discovery/Document Processing | $ 5,011.38 | $      0.00 |
| Legal Research | $32,021.24 | $      0.00 |
| Litigation Support & Services | $ 5,385.28 | $      0.00 |
| Meals | $ 1,935.81 | $   905.96 |
| Printing/Duplication | $16,903.43 | $ 3,500.00 |
| Telephone Tolls | $   322.81 | $      0.00 |
| Travel | $17,824.20 | $ 6,725.58 |
| Expert Fees | $ 2,047.57 | $ 2,047.57 |
| **TOTAL** | **$130,611.37** | **$17,680.84** |

## IV. CONCLUSION

For the reasons set forth above, I hereby **RECOMMEND GRANTING** Wyatt's Motion for Attorneys' Fees and Expenses (Dkt. No. 181), and **AWARDING** Wyatt Two Hundred Twenty Five Thousand Dollars ($225,000.00) in attorney's fees, with $1.00 paid from Wyatt's damages and the remainder paid by Defendant Worsham, and Seventeen Thousand Six Hundred Eighty and 84/100 Dollars ($17,680.84) in expenses.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Entered: January 23, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge